In re MARKETING RESOURCES IN-
TERNATIONAL CORP., Debtor.

MARKETING RESOURCES INTERNA-
TIONAL CORP., Plaintiff,

v.

PTC CORPORATION, Defendant.

MARKETING RESOURCES INTERNA-
TIONAL CORP., Plaintiff,

v.

Francis A. CERCHIARO, Defendant.

MARKETING RESOURCES INTERNA-
TIONAL CORP., Plaintiff,

v.

PTC CORPORATION, Defendant.

Bankruptcy No. 83–01437G.
Adv. Nos. 83–2028G, 83–2092G
and 83–2093G.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 27, 1984.

William H. Ewing, Nancy G. Brockway,
Hangley, Connolly, Epstein, Chicco, Fox-
man & Ewing, Philadelphia, Pa., for debt-
or/plaintiff, Marketing Resources Intern.
Corp.

Andrew D. Bershad, Matthew J. Siembie-
da, Blank, Rome, Comisky & McCauley,
Philadelphia, Pa., for defendants, PTC
Corp. and Francis A. Cerchiaro.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

In resolving the three above captioned adversary proceedings, we face several issues, the most prominent of which arises where the debtor has satisfied an antecedent debt to a noninsider more than ninety days but less than one year prior to the filing of the petition, which satisfaction has the effect of releasing an insider, who was a surety on the debt, from his contingent liability thereof; we must determine whether the insider's release from liability is actionable under 11 U.S.C. § 547(b) of the Bankruptcy Code ("the Code"). For reasons expressed herein we will enter an order avoiding the surety's release from liability and enter judgment against such surety in an amount equal to the extent of his liability on the debt immediately prior to the transfer.

The facts of the case before us are as follows:[1] PTC Corporation ("PTC"), which is the defendant in two of the three adversary actions at bench, purchased a computer from International Business Machines, Inc. ("IBM"). Due to alleged deficiencies in the performance of the computer PTC commenced suit against IBM. PTC formed the debtor in January of 1981 and apparently retained an 80% ownership interest. In October of 1981 PTC agreed to sell its stock in the debtor under a contract ("the Separation Agreement") executed by two principals of the debtor, Bernard Goldberg ("Goldberg") and Stephen Sedmak ("Sedmak"), as well as the two officers of PTC, Francis Cerchiaro ("Cerchiaro") and John Buckley ("Buckley"). Under the terms of the Separation Agreement the debtor: issued to PTC a $150,000.00 note; agreed to offer PTC "special price considerations" when dealing with it; agreed with PTC that any settlement proceeds generated by the law suit with IBM would be split evenly between PTC and the debtor; agreed to apply any such settlement proceeds to the

reduction of the indebtedness on the $150,000.00 note; and agreed to purchase certain furniture and fixtures for $57,657.22. After the separation, Goldberg and Cerchiaro each owned 40% of the debtor's stock, while Sedmak owned 20% of such stock. A proposed settlement of the IBM litigation was executed on April 6, 1982, and on that day IBM delivered a check to PTC in an amount of approximately $400,000.00. Based on the Separation Agreement and the settlement negotiations, the debtor was entitled to receive $102,094.81 from the settlement.

The debtor obtained a $100,000.00 loan from Continental Bank ("Continental") in January of 1982 for which Goldberg, Sedmak and Cerchiaro and their wives were sureties, whereby each couple's liability was limited to $40,000.00. With an eye toward obtaining funding from Girard Bank ("Girard"), the debtor and PTC modified the Separation Agreement in May 1982, whereby PTC agreed that repayment on its loan would be subordinated to any loan granted by Girard. The debtor agreed that, if the loan was obtained, it would pay the proceeds to PTC in cancellation of the $150,000.00 note. Cerchiaro contracted to surrender all his stock in the debtor when the Girard loan was obtained. The parties negotiations culminated in Girard's lending the debtor $99,800.00, which was applied toward satisfying the Continental loan within one year of the filing of the petition. The Girard loan was insufficient to satisfy completely the Continental loan so Sedmak wrote a personal check for the balance of the debt. The debtor's satisfaction of the Continental loan occurred within one year of the filing of the petition and had the effect of releasing Cerchiaro from his contingent liability on his loan guarantee. At that time Cerchiaro was chairman of the board of the debtor and at that time he had reasonable cause to believe that the debtor was insolvent.

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

After reviewing the debtor's financial affairs we find that the debtor was insolvent at the time of the transfer.

The debtor's balance sheet, prepared at a time shortly before the transfer, revealed that the debtor's liabilities exceeded its assets by $117,425.00. But apparently due to limitations of the discipline of accounting the debtor's balance sheet did not reflect the debtor's interest in computer software which, as noted above, had a fair market value of $120,000.00. Certain furniture was carried on the balance sheet as having a "historic value" of $52,000.00, although its actual value was $15,000.00. We fix the value of the software and the furniture as of the time of the transfer at issue although our determination is based, in part, on sales of these items which occurred several months after said transfer. The balance sheet also underestimated the debtor's liabilities by $3,679.87 on a note owed to PTC. The $150,000.00 stock note and another $50,000.00 note were not reflected on the balance sheet. Notwithstanding these two liabilities, at the time of the debtor's satisfaction of Continental's loan, the debtor's liabilities exceeded its assets by $38,104.87.

In the Separation Agreement the debtor agreed to offer its services to PTC at reduced prices which were to revert to the standard pricing "after (a) a payment due, as defined above, has become thirty (30) days in arrears, and (b) the debtor, having given not less than ten (10) days written notice to PTC 'that PTC must bring said arrears current within ten (10) days or be considered to be in default of [the Separation Agreement.']" In May of 1982 the debtor sent PTC its first notice that PTC must cure its arrearages within ten days, but the notice was sent within the thirty day period immediately after the payment became due. In September of 1982 the debtor again sent PTC a notice to pay an invoice dated August 31, 1982, although the thirty day grace period had not run. Since the debtor had failed to pay its August and September rents to its landlord, Franklin Realty, for which PTC was secondarily liable, PTC timely delivered a check to the debtor for the August 30th invoice although the check was payable to both the debtor and Franklin Realty. The debtor, protesting that Franklin Realty was a joint payee on the check, returned said check to PTC. When PTC was informed that the overdue payments to Franklin Realty had been paid by the debtor, PTC tendered to the debtor payment on the August 31st invoice which was calculated in accordance with the reduced price schedule which had been afforded PTC. Due to PTC's purported default in failing to tender timely the August 31st payment, the debtor began charging PTC full price for its services rather than the reduced prices.

Through modifications of the Separation Agreement, the debtor agreed to provide five individuals who would work on PTC's projects "on a dedicated basis." In exchange for the opportunity of having each of these individuals devote forty hours of work per week to PTC, it agreed to reimburse the debtor for the salaries of these individuals although at any one time the services of any or all of them might not be needed for PTC's work. When these five were not needed for such work, they performed work for other clients of the debtor who were billed accordingly.

The debtor is currently indebted to PTC for charges arising in November and December of 1982 in the amount of $33,580.48 plus $55,679.87 on a note and PTC is obligated to pay the debtor $33,106.18 for charges incurred in the same time period.

In this opinion we resolve three adversary actions, the first of which was filed to avoid a transfer of the proceeds of the settlement from IBM to PTC. The debtor urges the applicability of 11 U.S.C. § 547(b)[2] which allows the trustee or debt-

---

**2.** (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

or in possession[3] to avoid a preferential transfer. We have quoted below a respected treatise in the field of bankruptcy which discusses preferences generally.[4] In the typical preference action the debtor or trustee is attempting to avoid a transfer that occurred between the debtor and the defendant. But in the case at bench the assailed transfer is IBM's disbursement of funds to PTC.

■ The terms of § 547(b) indicate that IBM's payment of funds to PTC is not avoidable since this provision is only directed at "transfer[s] of property of the debtor." IBM's payment by check or cash to PTC utilized IBM's own funds and, as such, the debtor had no property interest in the money. Due to the liquidity and fungibility of money, only in limited circumstances does an entity have a property interest in specific money held by another legal entity. The mere obligation to pay on a debt does not give the creditor property rights in any of the funds of his debtor. Consequently, the debtor did not have a property interest in the money which was transferred to PTC. Our thoughts on this matter would be subject to change if the transferor were not an independent party but rather an employee or agent of the debtor.

If we were to grant the debtor's request that we set aside the transfer, that result would still not bring assets into the estate. If we avoid IBM's transfer of funds to PTC, PTC would merely be obligated to return the advanced funds to IBM.

■ The second suit is a motion by the debtor against Cerchiaro in which the debtor asserts that when it satisfied the loan to Continental and thus released Cerchiaro from his contingent liability on that debt as a guarantor, the debtor effected a transfer which is now avoidable under § 547(b). In a recent case we were presented with the situation in which the debtor satisfied a debt to a noninsider more than ninety days prior to the filing of the petition but less than one year prior to that date when the debt was guaranteed by insiders. Although the satisfaction to the noninsider was unassailable under § 547(b), we held that the release of liability of an insider guarantor within the one year vulnerability period was a preference within the meaning of § 547(b). *Goldberger v. Davis Jay Corregated Box Corp. (In Re Mercon Industries, Inc.)*, 37 B.R. 549 (Bankr.E.D.Pa. 1984). Although the material we have summarized here from *Mercon* was directed at illucidating our reasoning in that case, we now expressly adopt that lan-

(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
(i) was an insider; and
(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b).

3. § 1107. Rights, powers, and duties of debtor in possession
(a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in

possession shall have all the rights, other than the right to compensation, under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.
11 U.S.C. 1107(a).

4. ¶ 547.01 Elements of a Preference.
A preference in the common business sense, that is, favoritism by a debtor of a certain creditor or creditors, may be perfectly valid unless interdicted by statute. At common law, generally speaking, a debtor may by payment or other transfer lawfully prefer any one or more of his creditors over other creditors so long as the object of the transition is to pay or secure the payment of a debt. It is only where such a transfer is related to a subsequent bankruptcy or insolvency statute that it runs afoul of prohibitory legislation and becomes invalid.
4 *Collier on Bankruptcy* § 547.01, 547–8 (15th ed.1983).

guage as our holding in the case at bench and likewise incorporate from that opinion our bases for so concluding. What remains for us in this case is to determine if the debtor has met each of the elements of § 547(b).

There is no dispute that the debtor's satisfaction of the loan to Continental was a transfer of property of the estate and there are no contentions that the elements of § 547(b)(1), (b)(2) and (b)(5) have not been met. Under § 547(b)(3) we found above that the debtor was insolvent at the time of the transfer. Under § 547(b)(4), as we stated, the transfer was made to a director of the debtor within one year prior to the filing of the petition at a time when that director had reasonable cause to believe that the debtor was insolvent. Thus, the debtor has met the requirements of § 547(b)(4) since, under 11 U.S.C. § 101(25)(B)(i) of the Code, an insider of a corporate debtor includes the director of that debtor. Consequently, the debtor has established a prima facie case for relief under § 547(b).

Cerchiaro defends against this action by asserting that § 547(c)(1)[5] bars the debtor from avoiding the transaction. In support of this contention he asserts that he gave new value in exchange for the extinguishment of his liability as guarantor. The "new value" he contends, consists of: his "return of all his stock to [the debtor]"; "the subordination of [the debtor's] debts to PTC to [the debtor's] debts to Girard Bank"; and "the waiving of the balance of [the debtor's] Promissory Note to PTC." Cerchiaro has introduced no evidence on the worth of any of these three components and we conclude that he has failed to prove his entitlement to protection under § 547(c)(1).

Cerchiaro's last contention is that the debtor should be estopped from prosecuting an action under § 547(b), since it did not want his guarantee on the loan to Gir-

ard. We cannot fathom any reasonable connection between this averment and the debtor's action at bench. In addition, Cerchiaro failed to state or apply the requisite elements of estoppel *in pais*. Since Cerchiaro has failed to assert successfully a defense against the debtor's prima facie case, we will grant the debtor's request for relief in this action. The parties have not raised any contentions that Cerchiaro's liability under § 547(b) should be anything other than the full amount of his risk on the guarantee which was $40,000.00 and thus we will enter judgment against him in that amount.

■ In the third adversary proceeding the debtor has commenced suit against PTC for the cost of services rendered from October through December of 1982, in an amount found above to be $33,106.18. The debtor requests that we augment this amount to reflect PTC's alleged loss of its entitlement to reduced rates due to PTC's purported default under the Separation Agreement. We concluded that PTC did not breach the Separation Agreement and PTC's indebtedness stands at $33,106.18.

■ In this third action PTC has counterclaimed for the balance on a note and for charges owed by the debtor. We found the outstanding indebtedness on the note to be $55,679.87 and we determined that overdue charges total $33,580.00 for the months of December and November of 1982. The debtor contends that the latter figure should be reduced since part of that amount is comprised of rent allocable on PTC's leasehold which the debtor vacated in December immediately after which PTC retook possession. Since there is no satisfactory evidence proving when, in the month of December, PTC reentered the premises, we cannot reduce the rent for that month pro rata and thus the figure must remain at $33,580.48. In setting off

---

**5.** (c) The trustee may not avoid under this section a transfer—
   (1) to the extent that such transfer was
   (A) intended by the debtor and the creditor to or for whose benefit such transfer was

made to be a contemporaneous exchange for new value given to the debtor[.]

11 U.S.C. § 547(c)(1)

the various claims litigated under this adversary proceeding we find that the debtor owes PTC $56,154.17 on this third action.

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).