In re Elmer E. JACKSON, Jr., Debtor.

**Ralph C. McCULLOUGH, II,**
**Trustee, Plaintiff,**

v.

**Louise GARLAND, Defendant.**

**Bankruptcy No. 85–01417.**
**Complaint No. 87–0176.**

United States Bankruptcy Court,
D. South Carolina.

Jan. 19, 1988.

Lydia Nyzio, Finkel, Georgaklis, Goldberg, Sheftman & Korn, P.A., Columbia, S.C., for plaintiff.

George G. Reaves, Florence, S.C., for defendant.

### MEMORANDUM AND ORDER

J. BRATTON DAVIS, Chief Judge.

In this adversary proceeding against the debtor's mother-in-law, the trustee seeks to avoid an alleged preferential transfer pursuant to 11 U.S.C. § 547(b) [1].

### FINDINGS OF FACT

1. On July 25, 1985, the debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. The debtor voluntarily converted the chapter 11 case to a case under chapter 7 of the Bankruptcy Code on April 25, 1986.

2. The plaintiff is the trustee of the debtor estate.

3. The defendant is the debtor's mother-in-law, and has been the debtor's mother-in-law at all times relevant to the present controversy.

---

**1.** Further references to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) are by section numbers only.

4. This court has jurisdiction over this adversary proceeding.

5. On November 29, 1984, which is on or within one year before the date of the filing of the petition for relief, some of the debtor's property was transferred to the defendant on account of an antecedent debt. This transfer occurred when:

Kay J. Forkel, executrix of the estate of Eleanor Rumph, the debtor's mother, issued a check in the amount of $8,000. to the defendant in satisfaction of a debt in favor of the debtor created under the Last Will and Testament of Eleanor Rumph.

The payment was made directly to the defendant rather than to the debtor, on account of a debt from the debtor to the defendant pursuant to a prior, unsecured loan in the amount of $60,000.

6. The debtor's schedule A-3, which enumerates the creditors having unsecured claims without priority, lists the defendant as having an unsecured claim in the amount of $60,000. The debtor filed schedule A-3 on August 7, 1985 while the case was a chapter 13 case. After the chapter 11 case was converted to a case under chapter 7, the debtor filed, on June 18, 1986, a statement which indicated that schedule A-3, and all other schedules, did not need to be amended despite the conversion of the case.

7. As of August 7, 1985, the date the debtor's schedules were filed, the debtor's debts totalled $102,800., and his assets totalled $26,100.

8. When the debtor's schedules were filed on August 7, 1985, the debtor's liabilities exceeded his assets by $76,700.

9. As of November 29, 1984, the date of the alleged preferential transfer (see Fact 5), the debtor's financial situation was essentially the same as when the debtor filed his schedules on August 7, 1985, which means that on November 29, 1984, the debtor's liabilities exceeded his assets by $76,700.

10. The alleged preferential transfer (see Fact 5) enabled the defendant to receive more than she would have received if the case were under chapter 7 of the Bankruptcy Code, if the transfer had not been made, and if she received payments of her debt to the extent provided by the provisions of chapter 7 of the Bankruptcy Code (§ 547(b)(5)).

## ISSUES

1. Whether the payment as described in Fact 5 constitutes an avoidable preference within the meaning of § 547(b).

2. Whether the payment falls within the ordinary course of business exception (§ 547(c)(2)) to § 547(b), and is, therefore, not avoidable by the trustee.

## DISCUSSION

In this adversary proceeding, the trustee seeks to avoid an alleged preferential transfer pursuant to § 547(b) which states:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; *and*

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

For the purposes of § 547, "the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest

against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section." § 547(g). The relevant portion of subsection (c) is set forth on page 6 of this order.

## I

By stipulation of the parties, the following elements of a voidable preference under § 547(b) are agreed and require no further proof:

1. The transfer was made "to or for the benefit of a creditor (the defendant). Fact 5.

2. The transfer was made "for or on account of an antecedent debt owed by the debtor before such transfer was made." Fact 5.

3. The transfer in issue was made between ninety days and one year before the date of the filing of the petition, and the creditor (the defendant) was an insider. Fact 5; Fact 3.

The essentials of a voidable preference pursuant to § 547(b) which were not stipulated by the parties are:

1. Whether the transfer was made while the debtor was insolvent (§ 547(b)(3)); and

2. Whether the transfer enabled the defendant to receive more than she would have received if the case were a case under chapter 7, if the transfer had not been made, and if she received payment of the debt to the extent provided by chapter 7 of the Bankruptcy Code (§ 547(b)(5)).

The trustee relies on the debtor's schedules and the debtor's testimony concerning those schedules in order to prove that the alleged preferential transfer was made while the debtor was insolvent. The debtor's schedules reveal that, as of August 7, 1985, when the schedules were filed, the debtor's liabilities exceeded his assets by $76,700 (Fact 8). The debtor has testified that at the time of the transfer, his assets exceeded his liabilities. The undisputed evidence is, and the court finds, that he was insolvent at the time of the transfer November 24, 1984.

This court finds as a fact that the transfer (see Fact 5) enabled the defendant to receive more than she would have received if the transfer had not been made and she had received a distribution pursuant to the provisions of chapter 7. The debtor's schedules list the defendant as an unsecured creditor (Fact 6), but these schedules reveal little, if any, non-exempt property from which an unsecured creditor could receive a payment.

The debtor's schedules list real property owned by the debtor which may be partially unencumbered. The court finds that, if that property were sold, the lien satisfied, and the costs of sale paid, very little money would remain for distribution to the general unsecured creditors. However, the debtor testified that he no longer owns that real estate. If that be true, it is reasonable to conclude that no distribution will be made to the debtor's unsecured creditors. With no distribution being available to unsecured creditors, it appears that the $8,000. transfer to the defendant enabled her to receive more than she would have received had the transfer not been made and she received payment on her debt under the provisions of chapter 7, i.e., no payment.

The court concludes that the trustee has met his burden of proving the avoidability of the transfer under subsection (b) of § 547. The defendant now bears the burden of proving the nonavoidability of the alleged preferential transfer. § 547(g).

## II

The defendant asserts that the alleged preferential transfer was part of a series of loan repayments which fall within the ordinary course of business exception set forth in § 547, which, in relevant part, states:

\* \* \* \* \* \*

(c) The trustee my not avoid under this section a transfer—

\* \* \* \* \* \*

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

In order for this transfer to fall within the exception set forth in § 547(c)(2), the defendant must prove each of the following:

a. that the $60,000. debt owed to the defendant was incurred in the ordinary course of business or financial affairs of the debtor and the defendant;

b. that the $8,000. payment to the defendant was made in the ordinary course of business or financial affairs of the debtor and the defendant;

c. that the transfer was made according to ordinary business terms.

## A

The court now considers whether the $60,000. debt owed to the defendant was incurred in the ordinary course of business or financial affairs of the debtor and the defendant.

The debtor testified that he borrowed the money from the defendant to operate his business. The defendant testified that she borrowed, from the Federal Land Bank, the funds which she advanced to the debtor, and that her loan from the Federal Land Bank was secured by a mortgage on her real estate. She testified further that the debtor agreed to pay her an amount equal to the amount due to the Federal Land Bank or to make such payment directly to the Federal Land Bank on behalf of the defendant. The debtor testified that the payment in issue which was made on November 29, 1984, was the fifth in a series of payments made pursuant to the agreement just described.

■ The defending creditor must prove, *inter alia*, that the debt on which the alleged preferential payment was made was incurred in the ordinary course of business

of the debtor *and* the transferee. § 547(c)(2)(A).

"[I]n determining what constitutes the ordinary course of business of the debtor and the creditor, the policies behind section 547, and 547(c)(2) in particular, must be borne in mind." *Aguillard v. Bank of Lafayette (In re Bourgeois)*, 58 B.R. 657, 660 (Bkrtcy.W.D.La.1986). The Bankruptcy Amendments and Federal Judgeship Act of 1984 (P.L. 98–353) amended § 547(c)(2) by eliminating the 45 day limit between the incurring of the debt and the alleged preferential transfer. Although we have found no reported legislative history accompanying the 1984 amendment to § 547(c)(2), the court has no basis for believing that Congress intended to make a fundamental change to the ordinary course of business exception. The better view "is that the amendment was intended only to eliminate an artificial time limit and no more." *Aguillard*, at 659. Assuming no fundamental change was intended by the 1984 Amendment to § 547(c)(2), the court may look to the legislative history which accompanied the original § 547(c)(2):

The second exception protects ordinary course of business (or of financial affairs, where a business is not involved) transfers. For the case of a consumer, the paragraph uses the phrase "financial affairs" to include such nonbusiness activities as payment of monthly utility bills. If the debt on account of which the transfer was made was incurred in the ordinary course of both the debtor and the transferee, if the transfer was made no later than 45 days after the debt was incurred, if the transfer was made in the ordinary course of both the debtor and the transferee, and if the transfer was made according to ordinary business terms, then the transfer is protected. The purpose of this section is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 373 (1977); S.Rep.No. 95–989, 95th Cong., 2d Sess. 88 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5874, 6329.

The 45 day requirement to which the above language refers no longer applies. As stated in *Aguillard,* at 660, "[t]his court is of the opinion that the 1984 amendment removed only an arbitrary time limit, and that the spirit and intent of § 547(c)(2), i.e., the exemption from avoidance of trade credit transactions which are substantially contemporaneous exchanges, remains the same."

Given that the intent of § 547(c)(2) is to exempt normal trade credit transactions, the court must now consider whether the $60,000. loan which the defendant made to the debtor is a normal trade credit transaction. The defendant testified that she is employed as a registered nurse. The debtor testified that he ran a machine shop.

The $60,000. loan from the defendant to the debtor appears to be in the nature of a long-term loan. There is authority for the proposition that long-term loans do not fall within the "ordinary course of business" exception to § 547(b). *Aguillard, supra* at 660. Neither the debtor or the defendant has shown that the $60,000. loan was made in the ordinary course of their respective businesses.

Therefore, the court finds that the defendant has failed to meet her burden of proving that the debt was incurred in the ordinary course of business of the debtor *and* the defendant.

B

The defendant also bears the burden of proving that the transfer was made in the ordinary course of business or financial affairs of the debtor and the defendant. § 547(c)(2)(B). Both the debtor and the defendant testified that either the debtor or the defendant paid the bank approximately $8,000. each year. The testimony, however, was unclear about when or how the payments were made. No cancelled checks or receipts were produced. In short, the defendant has provided no documentation to establish the course of business or conduct of financial affairs surrounding these transfers. The defendant merely has testified that she borrowed money to lend to the debtor, and that the debtor agreed to repay her by paying the lending institution (the Federal Land Bank) directly or by paying the defendant. Without more, the defendant has not met her burden of proving that the alleged preferential transfer was made in the ordinary course of business or financial affairs of the debtor and the defendant.

Furthermore, the parties have stipulated that the alleged preferential transfer occurred as follows:

Kay J. Forkel, executrix of the estate of Eleanor Rumph, the debtor's mother, issued a check in the amount of $8,000. to the defendant in satisfaction of a debt in favor of the debtor created under the Last Will and Testament of Eleanor Rumph.

Said payment was made directly to the defendant rather than to the debtor, on account of a debt from the debtor to the defendant pursuant to a prior, unsecured loan in the amount of $60,000.

(Fact 6).

The payment in question was made from the estate of the debtor's deceased mother. Thus, even if this court were to conclude that the $60,000. debt was incurred in the ordinary course of the debtor's and the defendant's business or financial affairs, the $8,000. payment (the alleged preferential transfer) was not, "made in the ordinary course of business or financial affairs of the debtor" and the defendant. § 547(c)(2)(B).

Again, the defendant has not met her burden.

C

The defendant having failed to meet her burden of proving two of the three requirements of § 547(c)(2), this court does not need to address the issue of whether "the transfer was made according to ordinary business terms." § 547(c)(2)(C). Even if the defendant could prove that the transfer

was made according to ordinary business terms, she would not prevail.

### CONCLUSIONS

1. The transfer, by payment, described in Fact 5 constitutes an avoidable preference within the meaning of § 547(b).

2. The transfer does *not* fall within the ordinary course of business exception (§ 547(c)(2) to § 547(b)); therefore, it is avoidable by the trustee.

3. The transfer is void.

4. The plaintiff is entitled to recover from the defendant the sum of $8,000.

### ORDER

Accordingly, IT IS ORDERED, ADJUDGED AND DECREED that the trustee have judgment against the defendant for the sum of $8,000.