**In the Matter of Marlene M. FINN, Debtor.**

**Daniel GOSCH, Trustee of the Estate of Marlene M. Finn, Plaintiff–Appellee,**

**v.**

**Donald M. BURNS, Defendant–Appellant.**

**88–CV–72353.**

**No. 87–00635–R, 87–0490–R.**

United States District Court, E.D. Michigan, S.D.

June 15, 1989.

**124**

Daniel F. Gosch, Dickinson, Wright, Moon, VanDusen & Freeman, Detroit, Mich., for plaintiff-appellee.

Paul E. Slavin, UAW–Ford Legal Services Plan, Taylor, Mich., for defendant-appellant.

## OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT

HACKETT, District Judge.

Defendant appeals an order of the bankruptcy court entered in adversary proceeding No. 87–0490–R, granting plaintiff's motion for summary judgment, denying defendant's motion for summary judgment and granting plaintiff a $1,300 judgment pursuant to 11 U.S.C. § 547(b).

1. Stipulated Order Re: Facts, Scheduling, Amendment of Complaint and Affirmative De-

## BACKGROUND

On February 4, 1987, Marlene M. Finn (Debtor) filed a petition for relief under Chapter 7 of the Bankruptcy Code. Plaintiff Daniel F. Gosch (trustee) was appointed trustee of the Debtor's estate.

Approximately one year prior to the Debtor filing her petition for bankruptcy, she, in February, 1986, entered into an unsecured revolving credit loan agreement with the Taylor Credit Union (Credit Union) and obtained a loan in excess of $2,756. Defendant Donald M. Burns (Burns) co-signed the agreement and became a guarantor of the loan. Burns is the Debtor's brother.

Between March, 1986, and February, 1987, the Debtor made twelve monthly payments to the Credit Union. These payments amounted to $1,380.

On May 11, 1987, the trustee of the Debtor's estate commenced this adversary proceeding against Burns to avoid the Debtor's transfer of $1,380 to the Credit Union as preferential pursuant to 11 U.S.C. §§ 547 and 550 of the Bankruptcy Code. Both parties agreed that the issues to be resolved by the bankruptcy court concerned only matters of law and stipulated to the following facts:[1]

a.) The debtor has made a transfer of an interest of the debtor in property to the Taylor Community Credit Union;

b.) the transfer of the debtor's interest in property consists of transfers totalling $1,300.00 by the Debtor to the Taylor Community Credit Union ...;

c.) the transfers made by the debtor were on account of an antecedent debt owed by the debtor to the Taylor Community Credit Union before the transfers were made;

d.) the transfers made by the debtor were made while the debtor was insolvent;

e.) the transfers made by the debtor were made within one year of the

fenses, and Disposition of Case, p. 2.

date of the filing of the debtor's petition;

f.) the defendant executed the Guaranty Agreement ... on February 14, 1986, ...;

g.) by executing [the Guaranty Agreement], the defendant guaranteed the payment of the debtor's indebtedness to the Taylor Community Credit Union ..., subject to the conditions set forth on [the Guaranty Agreement];

h.) the defendant is an "insider" as defined in Section 101(30) of the Bankruptcy Code.

After stipulating to these facts, both parties filed cross-motions for summary judgment.

The bankruptcy court conducted a hearing on February 9, 1988, and, at the conclusion of the hearing, took the matter under advisement. By an amended memorandum opinion dated June 30, 1988, the bankruptcy court granted the trustee's motion for summary judgment, denied Burns' motion for summary judgment and entered a judgment in the amount of $1,300 in favor of the trustee. 86 B.R. 902. The bankruptcy court found that the trustee established all of the elements necessary to avoid the transfers pursuant to 11 U.S.C. § 547(b), and that the exception of 11 U.S.C. § 547(c)(2) did not apply because the long-term installment debt was not incurred in the ordinary course of the Debtor's financial affairs.

From this order, Burns now appeals.

### STANDARD OF REVIEW

■ While this court reviews the bankruptcy court's conclusions of law *de novo*, it may not disturb the bankruptcy court's factual findings unless clearly erroneous. *Northern Pipeline Construction v. Marathon Pipe Line Co.*, 458 U.S. 50, 55, 102 S.Ct. 2858, 2863, 73 L.Ed.2d 598 (1982); *In the Matter of James R. Gullifor*, 47 B.R. 450, 451 (Bankr.E.D.Mich.1985).

Bankruptcy Rule 8013 provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness.

### ANALYSIS

■ A trustee may avoid preferential transfers under 11 U.S.C. § 547(b). That section provides, in pertinent part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The trustee has the burden of establishing the avoidability of a transfer under this section. *In re Jackson*, 90 B.R. 793, 795 (Bankr.D.S.C.1988).

Burns admits that he is an insider pursuant to 11 U.S.C. § 101(30), but contends that the transfer was excepted from the avoiding powers of the trustee. Burns argues that he had no control over which debts were paid by the Debtor and asserts that he was unaware of her financial sta-

126

tus. Burns characterizes himself as a guarantor in a consumer situation and urges this court to utilize its equitable powers to reverse the bankruptcy court's ruling.

The trustee, on the other hand, contends that the bankruptcy court properly found that he established all of the requisite elements of a preference. The trustee argues that by virtue of the parties' stipulation, subparagraphs (1)–(4) of section 547(b) were met. With respect to subparagraph (5), the trustee argues that his affidavit attesting to the fact that as a result of the Debtor's payments to the Credit Union, Burns received more than he would have in a Chapter 7 liquidation, was sufficient to meet the requirements of this subparagraph. The trustee further argues that the bankruptcy court properly rejected the Debtor and Credit Union's reaffirmation as legally irrelevant. The trustee concludes that this court should affirm the bankruptcy court's decision.

■ As the bankruptcy court found, the parties' stipulation met subparagraphs (1) through (4) of section 547(b). The Debtor's payments to the Credit Union were made for the benefit of Burns, who clearly was one of the Debtor's creditors. Moreover, the parties' stipulation established that the payments were made on account of an antecedent debt, while the Debtor was insolvent and within one year of the Debtor filing for bankruptcy. And, with respect to subparagraph (5) of section 547(b), the trustee's affidavit established that the payments enabled Burns to receive more than he would have if the case were a case under Chapter 7 liquidation. Thus, this court finds no reason to set aside the bankruptcy court's findings of fact or disturb its conclusions of law.

■ Burns attempts to distinguish his standing as an insider from "true insider-guarantors" and directs this court's attention to *Kapela v. Newman*, 649 F.2d 887 (1st Cir.1981); *In re Marketing Resources International Corp.*, 41 B.R. 575 (Bankr. E.D.Pa.1984); and, *In re Herman Cantor Corp.*, 15 B.R. 747 (Bankr.E.D.Va.1981). Burns asserts that in all of these cases the trustees were successful in avoiding preferences as against guarantors or sureties who were also directors or shareholders of the primary debtor corporation. As such, Burns argues, the guarantors or sureties were able to "pick and choose" which debts to pay and did so to avoid personal liability when the corporations filed bankruptcy petitions. Burns argues that these are true insider situations and again asserts that he had no control over which debts were paid by the Debtor and was unaware of her financial situation, unlike the guarantors and sureties in the above cases.

"It is well settled that guarantors, sureties and endorsers become creditors of the debtor when they make payment on a debt which they have guaranteed or endorsed." *In re Herman Cantor Corp., Id.* at 749. This is no less true in a situation which is more akin to a consumer transaction than in instances where the insiders are also directors or shareholders of a corporation in bankruptcy. The potential for the creditor to benefit from the debtor's payments remains the same in both situations since a contingent debt is discharged by the payments. *In re Herman Cantor Corp., Id.* at 749. That Burns had no control over which debts were paid by the Debtor, or that he was unaware of her financial situation during the year preceding the Debtor's bankruptcy, are all risks he assumed as a guarantor of the debt. This court finds unpersuasive Burns' contention that he is not a "true insider" and declines his invitation to employ its equitable powers to reverse the bankruptcy court.

■ Next, Burns argues that because the Debtor reaffirmed her debt to the Credit Union, he, as a contingent creditor, was not treated differently or favored over other creditors in a similar class as required by subparagraph (5) of section 547(b). Burns asserts that the contingency which would have made him a creditor never occurred and relies upon *Seidle v. GATX Leasing Corp.*, 45 B.R. 327 (S.D.Fla.1984), *aff'd,* 778 F.2d 659 (11th Cir.1985), and *In re Derritt*, 20 B.R. 476 (Bankr.N.D.Ga. 1982), in support of his contention.

*Seidle* involved a suit by a trustee to recover $326,902.32 as preferential transfers made by the debtor to the corporation from which the debtor purchased an aircraft and some engines. The unpaid balance of the purchase price was covered by a promissory note and the corporation was given a security interest in the aircraft to secure the payments due under the note. After the debtor filed for bankruptcy, the debtor and corporation entered into a stipulation pursuant to 11 U.S.C. § 1110 which not only permitted the debtor's continued use of the aircraft, but also obligated the debtor to cure its prior defaults, including all overdue payments. This stipulation was approved by the bankruptcy court. Following the approval of the stipulation, the trustee filed suit seeking to set aside as preferences under 11 U.S.C. § 547 the $326,902.32 in payments made by the debtor to the corporation under the note.

In granting the corporation's motion for summary judgment, the bankruptcy court held that the trustee was estopped from challenging the preferential payments; that the transfers were authorized by 11 U.S.C. § 1110 and did not improve the corporation's position under the Code, and that permitting recovery of the aircraft payments would violate the policies of 11 U.S.C. § 1110. The bankruptcy court explained "... [the corporation] occupies a special position by virtue of the 'new life' conferred on the subject debt by the bankruptcy court's approval of the stipulation. Moreover, here it is clear that [the corporation] did not profit at the expense of the estate by receiving payments which would, in any event, have to have been made at the time of the stipulation...." *Seidle*, 45 B.R. at 332.

*Derritt* involved suits by the trustee to recover as preferential installment loan payments made by consumer-debtors to creditors on debts that were secured by property of the consumer-debtors and made in the ordinary course of the consumers' affairs, but within the 90 days before the debtors filed for bankruptcy. In both cases, the debtor and creditor agreed to reaffirm the debt and the reaffirmation agreement was approved by the bankrupt-

cy court. In denying the trustee any recovery, the bankruptcy court noted that the reaffirmation agreement gave new life to the indebtedness and placed the creditors on a different footing than the claims of the other creditors, and rejected the trustee's arguments that the creditors received a preference because they received more than other unsecured claimants or more than they would have received had they received payment pursuant to Chapter 7 of the bankruptcy code.

However, this court finds persuasive the bankruptcy court's analysis and for the same reasons rejects Burns' argument and the reasoning of *Seidle* and *In re Derritt.*

First, section 547(b)(5)(C) requires the court to determine the payment that the creditor would have received if the transfer had not been made "to the extent provided by the provisions of this title [Title 11]." Plainly enough, this language is intended to focus the Court's attention on the distribution that the creditor would have received (assuming the transfer had not been made) as a result of the due administration of the debtor's estate pursuant to the Bankruptcy Code, according to the priorities of distribution set forth in sections 507 and 726. When a debtor enters into a reaffirmation agreement and thereafter makes payments to the creditor, those payments are made pursuant to that reaffirmation agreement and not pursuant to "the provisions of this title [Title 11]." It is contrary to the first purpose of bankruptcy—to give the debtor a fresh start—to conclude that post-petition payments made by the debtor are made pursuant to Title 11. Thus, the hypothetical distribution to the creditor pursuant to the hypothetical liquidation set forth in section 547(b)(5) does not include the payments that the debtor has agreed to make pursuant to a reaffirmation agreement.

Second, the analysis required by section 547(b)(5) must be undertaken as of the moment of bankruptcy, and not some later, unspecified date. As noted in 4

128

*Collier on Bankruptcy*, ¶ 547.08, p. 547–37 (15th ed. 1987):

> Section 547(b)(5) codifies the Supreme Court's holding in *Palmer Clay Products Co. v. Brown*, [297 U.S. 227, 229, 56 S.Ct. 450, 451, 80 L.Ed. 655 (1936)]: whether a particular transfer is preferential should be determined "not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results." (Footnotes omitted.)

Third, there is no explicit language in section 547 that would serve to undermine a preference claim relating to pre-petition payments on a debt that the debtor chooses to reaffirm post-petition. If Congress intended to create such an exception to preference liability, it certainly could have done so explicitly. *Cf.* 11 U.S.C. § 547(c).

Fourth, as a practical matter, allowing the debtor to undermine an otherwise valid preference claim simply by the post-petition act of reaffirming a pre-petition debt would create real opportunities for substantial mischief, especially in circumstances involving insiders. It takes no great effort to speculate about the deals that might be attempted between the debtor and the creditor in an effort to avoid the preference action; for example, the debtor might agree to give the creditor a reaffirmation agreement, to show the court in an effort to avoid preference liability, in exchange for the creditor's promise to the debtor not to enforce it. The Court should be very hesitant to construe the Bankruptcy Code in a way that allows such conduct. *Cf. Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 432 (6th Cir.1982). Fifth, Burns's position takes no account of the scenario in which the debtor rescinds the reaffirmation agreement, pursuant to 11 U.S.C. § 524(c)(2) and (4).

Thus, this court, like the bankruptcy court, concludes that the reaffirmation agreement is legally irrelevant and finds that the trustee established all the requisite elements to satisfy 11 U.S.C. § 547(b) and avoid the Debtor's payments to the Credit Union.

Alternatively, Burns contends that section 547(c)(2) insulates the transfer from the avoiding powers of the trustee and that the bankruptcy court erred in ruling that the Debtor's payments were not excepted under this section.

The trustee contends that Burns failed to make the requisite showing required under section 547(c)(2), and asserts that although the Debtor made her payments in the ordinary course of her financial affairs, the debt was not incurred in the ordinary course of the Debtor's financial affairs. The trustee concludes that there is no reason for this court to overturn the bankruptcy court's conclusion that the underlying debt was not incurred in the ordinary course of the Debtor's financial affairs.

The bankruptcy court found that while Burns showed that the Debtor made these monthly installment payments in the ordinary course of her financial affairs so as to satisfy subsection (c)(2)(B), this was irrelevant under subsection (c)(2)(A). The bankruptcy court reasoned that neither the Debtor, nor consumer—debtors in general, incur long-term installment debt in the ordinary course of their financial affairs as required by subsection (c)(2)(A). The bankruptcy court emphasized that section 547(c)(2) requires that the debt be incurred in the ordinary course of the affairs of both the Debtor and transferee.

Section 547(c)(2) of Title 11, United States Code, provides:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

Burns contends that the bankruptcy court's conclusion that incurring long-term installment debt is not within the scope of the ordinary course of the financial affairs of a consumer-debtor is contrary to stated law. Burns argues that prior to the 1984 amendments, courts determined that incurring a long-term debt was in the ordinary course of a consumer-debtor's business and financial affairs and would have excepted these transactions from the trustees' avoiding powers had not the forty-five day limit been imposed. Burns further argues that because the Bankruptcy Amendments and Federal Judgeship Act of 1984 abolished the forty-five day rule, commentators and authorities have adopted the view that long-term debt payable more than forty-five days from the date it is incurred is now included in the ordinary course of the consumer-debtor's business or financial affairs. Burns notes that the bankruptcy court has already concluded that 11 U.S.C. § 547(c)(2)(B) has been satisfied and concludes that the debt incurred by the Debtor was in the ordinary course of the financial affairs of both the Debtor and transferee which was sufficient to satisfy 11 U.S.C. § 547(c)(2)(A).

The purpose of section 547(c)(2) was to leave undisturbed normal financial relations. *In the Matter of Red Way Cartage Co., Inc.*, 84 B.R. 459, 460–461 (Bankr.E.D. Mich.1988). Prior to its amendment in 1984 by the Bankruptcy Amendments and Federal Judgeship Act (BAFJA), section 547(c)(2) protected only those payments that were made not later than 45 days after the debt was incurred. *In the Matter of Red Way Cartage Co., Inc., Id.* at 460–461. Forty-five days was considered a normal trade cycle. *In the Matter of Red Way Cartage Co., Inc., Id.* at 461.

Pre–BAFJA cases make clear that this defense was not intended for credit transactions that would remain unpaid for a long time, but rather for short term credit transactions kept current by the debtor. *In re RDC Corp.*, 88 B.R. 97, 99 (Bankr.W. D.La.1988). In addition, section 547(c)(2) was viewed as a compliment or near-equivalent to the contemporaneous exchange exception in section 547(c)(1). *In re RDC Corp., Id.* at 99. "Payments made within the 45–day trade credit cycle were so close to 'contemporaneous' that they were not to be treated as payments on 'antecedent' debts." *In re RDC Corp., Id.* at 99.

For example, in *Barash v. Public Finance Corp.*, 658 F.2d 504, 511 (7th Cir. 1981), a pre-Code case, the Seventh Circuit Court of Appeals stated:

In short, the § 547(c)(2) exception is aimed at transactions which, although they are technically credit transactions, are not intended to remain unpaid for a long time. In this sense, the "normal payments" exception is a variant of the "contemporaneous exchange" exception of § 547(c)(1). The courts in *In re McCormick*, 5 B.R. 726 (Bkrtcy.N.D. Ohio) and *In re Bowen*, 3 B.R. 617, 619 (Bkrtcy.E.D.Tenn.1980) considered consumer credit transactions comparable to the cases at bar and reached the same conclusion. Both courts based their analysis on Levin, *An Introduction to the Trustee's Avoiding Powers*, 53 Am. Bankr.L.J. 173 (1979). Levin was a member of the House Judiciary Committee staff which drafted the new Code. He explains in his article that § 547(c)(2) insulates ordinary trade credit transactions that are kept current. The 45–day limit was chosen because it reflected a normal trade cycle, and Levin agrees with *Collier* and our conclusion above that a debt is incurred when it becomes a legally binding obligation of the debtor. *Id.* at 186. Although the "normal payments" exception in § 547(c)(2) protects consumer transactions as well as trade credit, the installment debts involved here do

not fall within the statutory design. The cases in this appeal all involve long-term loans, in contrast to situations where full payment is expected shortly after the obligation was incurred, and in fact payment is made within 45 days. If all regular consumer installment payments are to escape the Trustee's avoidance powers, Congress, rather than the courts, should provide the relief. (Footnotes omitted.)

*Barash* is typical of the construction that was given to section 547(c)(2) prior to its amendment as regards long-term installment debt. Thus, contrary to Burns' contention, pre-BAFJA cases do not suggest that a long-term installment debt would have been considered incurred in the ordinary course of the debtor's business and financial affairs and excepted from the trustee's avoiding powers had not the 45–day limit been imposed. Moreover, there is a consensus among the courts and commentators that the amendment was intended only to eliminate an artificial time limit, and not to change fundamentally the scope of the ordinary course exception. *In re RDC Corp., Id.* at 100.

*In re Bourgeois,* 58 B.R. 657, 659–660 (Bankr.W.D.La.1986), held:

The question thus becomes whether, in amending section 547(c)(2) to eliminate the 45 day limit, Congress intended to fundamentally change the scope of the ordinary course exception. This court is convinced that the better view is that the amendment was intended only to eliminate an artificial time limit, and no more. The 45 day limit was eliminated so that the provisions of the Code would comport with normal business policies. From its inception, section 547(c)(2) was intended to exempt normal trade credit transactions.

\* \* \* \* \* \*

It also seems unlikely that Congress intended to make a sweeping change in the ordinary course exception, because of the lack of debate and legislative history accompanying the amendment. This court is of the opinion that the 1984 amendment removed only an arbitrary

time limit, and that the spirit and intent of section 547(c)(2), i.e. the exemption from avoidance of trade credit transactions which are substantially contemporaneous exchanges, remains the same.

\* \* \* \* \* \*

As discussed above, section 547(c)(2) was intended to apply to trade credit transactions, which are similar to contemporaneous exchanges. Long-term loans, on the other hand, are not contemporaneous exchanges, but a form of capitalization which is not generally part of the debtor's day to day business activities. Thus, although long-term loans may be ordinary to the banks, they are not the ordinary course of business of the debtor within the meaning of the section 547(c)(2). "Ordinary course" refers to the debtor's normal business operations of selling goods or providing services, not borrowing money. Further, because of the preference provisions of the Code, this court agrees with the court in *Lingley v. Stuart Shaines, Inc. (In re Acme–Dunham, Inc.)* 50 B.R. 734 (D.Me.1985), which determined that section 547(c)(5) was not intended to apply to long-term installment loans.

\* \* \* \* \* \*

In light of that fundamental difference between trade credit and long-term credit, this court finds that the debts in question here were not incurred in the ordinary course of business of the debtor, as that term is used in section 547(c)(2).

Similarly, *In re Control Electric, Inc.,* 91 B.R. 1010, 1013–1016 (Bankr.N.D.Ga. 1988), held that long-term installment loan transfers were not intended by Congress to be excepted from the avoidance provisions of § 547(b) and observed:

In answer to the complaints of trade creditors and commercial paper issuers, Congress eliminated the 45–day limitation. *Id.* Although long-term lenders had not been vocal in seeking a change in preference law which would insulate them from avoidance of installment payments made within the preference period, the elimination of the 45–day limitation

removed the primary obstacle which excluded long-term loans from the § 547(c)(2) exception.

Accordingly, it would appear that elimination of the 45–day limitation brought long-term loans within the scope of the § 547(c)(2) exception. Unfortunately, however, the conclusion is synthetic and, while facially appealing, belies an incomplete analysis. No legislative history, by way of Congressional comment, exists which clearly allows such a facile conclusion.

\*     \*     \*     \*     \*     \*

The purpose of § 547(c)(2) is to encourage creditors to continue dealing normally with the debtor rather than taking extraordinary actions which might precipitate or accelerate the debtor's slide into bankruptcy. *Morris v. United States*, 53 B.R. 190 (Bankr.Ore.1985). Thus, whereas short-term trade debt and even refinancing arrangements within the context of a workout would legitimately fall within the § 547(c)(2) exception, long term debt undertaken prior to the onset of debtor's financial difficulties would not foster this purpose. Furthermore, in the case of a long-term debt incurred before the onset of financial difficulties, it is unlikely the lender was influenced by the possibility of its payments being protected by the § 547(c)(2) exception.

*See also, In re Jackson*, 90 B.R. 793, 796 (Bankr.D.S.C.1988).

In light of this authority, this court can only conclude that the long-term installment debt at issue here was not incurred in the ordinary course of the Debtor's business or financial affairs as required by subsection (A) of section 547(c)(2), and concurs with the bankruptcy court's conclusion that consumer-debtors, like the Debtor here, do not in general incur long-term installment debt in the ordinary course of their financial affairs.[2]

---

**2.** This court acknowledges that *In re Butler*, 85 B.R. 34, 36 (Bankr.D.Md.1988), held that "[a] long-term loan by a consumer debtor is unques-

## CONCLUSION

For all the reasons stated in this opinion, the bankruptcy court's order is affirmed.

IT IS SO ORDERED.

tionably within 'the ordinary course' of that debtor's 'financial affairs,'" but considers it an anomaly and declines to follow its reasoning.