**In re NSB FILM CORPORATION, a Delaware corporation, Debtor.**

**HEMDALE HOME VIDEO, INC., a California corporation, Plaintiff,**

v.

**OAK PRODUCTIONS, INC., a California corporation; Pacific Western Productions, Inc., a California corporation American Gothic Productions, Inc.; and Stan Winston, Inc.; Interlink Film Distribution Corporation, a New York corporation; and NSB Film Corporation, a Delaware corporation, Defendants.**

**Bankruptcy No. LA 92–44365 KL.**
**Adv. No. LA 93–02352 KL.**

United States Bankruptcy Court, C.D. California.

Oct. 28, 1993.

David M. Stern, Joshua D. Wayser, Stern, Neubauer, Greenwald & Pauly, Santa Monica, CA.

John A. Lawrence, Roel C. Campos, Cynthia E. Fruchtman, Richman, Lawrence, Mann, Greene, Arbiter & Chiezever, Beverly Hills, CA.

David A. Gill, Richard K. Diamond, Danning, Gill, Diamond & Kollitz, Los Angeles, CA.

Mary D. Lane, Paul J. Laurin, Loeb & Loeb, Los Angeles, CA.

Stephen Chrystie, Chrystie & Berle, Los Angeles, CA.

James M. Donovan, Law Offices of James M. Donovan, Los Angeles, CA.

Richard D. Cleary, Scott B. Kidman, Milbank, Tweed, Hadley & McCloy, Los Angeles, CA.

Wayne R. Terry, Mitchell, Silberberg & Knupp, Los Angeles, CA.

Robert Kropp, Jr., Joseph A. Kohanski, Taylor, Roth, Bush & Geffner, Burbank, CA.

Glenn R. Burr, CPA, Arthur Andersen & Co., Los Angeles, CA.

Chris W. Halling, Agapay, Levyn & Halling, Los Angeles, CA.

## CORRECTED MEMORANDUM OF DECISION AND ORDER.

KATHLEEN T. LAX, Bankruptcy Judge.

### PROCEDURAL HISTORY

This adversary proceeding was commenced by an action in interpleader brought by Hemdale Home Video, Inc. ("HHV") against NSB Film Corporation ("NSB" or "Debtor") and Oak. Productions Inc., Pacific Western Productions, Inc., American Gothic Productions, Inc. and Stan Winston, Inc. (the "Participants") to determine entitlement to certain funds (the "Profit participation Funds") arising out of exploitation of the motion picture "The Terminator." Both NSB and the Participants have asserted claims to the Profit Participation Funds.

NSB filed a cross-complaint against the Participants asserting that any interest of the Participants in the Profit Participation Funds is avoidable as a preferential transfer. The Participants seek dismissal pursuant to F.R.C.P. 12(b)(6), applicable to this adversary proceeding in accordance with F.R.B.P. 7012, on the grounds that the cross-complaint and its attached exhibits establish as a matter of law that the interest transferred was not property of the Debtor.

### UNDERLYING AGREEMENTS

1. NSB (then known as Hemdale Film Corporation) and Hemdale Home Video (HHV) entered into a Video Output Agreement dated as of May 31, 1991 (the "NSB–HHV Video Output Agreement") whereby HHV became the distributor of NSB-owned film titles, including that motion picture bearing the title "The Terminator."

2. The NSB–HHV Video Output Agreement was amended by a document dated as of February 18, 1992.

3. On May 4, 1992, NSB and the Participants entered into a Settlement and Release Agreement in settlement of an action filed in

Los Angeles Superior Court entitled *Pacific Western Productions, Inc., et. al. v. Hemdale Film Corporation, et. al.*, No. BC012873 (the "Settlement Agreement").

4. On May 6, 1992, NSB, the Participants and HHV executed a document entitled Exhibit "A" relating to the Settlement and Release Agreement in which, among other things, HHV agreed to pay to the Participants monies due to NSB pursuant to the NSB–HHV Video Output Agreement and to account for said sums to the Participants (the "HHV Acknowledgment").

5. On September 4, 1992, NSB filed a petition under Chapter 11 of the Bankruptcy Code.

### DISCUSSION

The transfer alleged to be preferential was the transfer to the Participants of the Debtor's rights to receive payment of the Profit Participation Funds from HHV under the HHV–NSB Video Output Agreement.

The Participants make two arguments:

**First,** that the Debtor's right to receive payments from HHV does not give the Debtor a property interest in the actual funds transferred or to be transferred.

**Second,** that the payment to the Participants by HHV are additionally not avoidable as preferential because HHV had an independent obligation to pay the Participants pursuant to the HHV Acknowledgement of the Settlement Agreement between NSB and the Participants. The HHV Acknowledgement was signed by NSB, HHV and the Participants.

■ 1. In support of its argument, the Participants rely primarily on the case of *In re Marketing Resources International Corp.* 41 B.R. 575 (Bankr.E.D.Penn.1984).

In *Marketing Resources,* at p. 578, the court held that the payment from non-debtor IBM to non-debtor PTC was not avoidable as a preference because IBM used its "own funds [to pay PTC], and, as such, the debtor had no property interest in the money." The *Marketing Resources* court further stated that "[d]ue to the liquidity and fungibility of money, only in limited circumstances does an

entity have a property interest in specific money held by another legal entity. The mere obligation to pay on a debt does not give the creditor [meaning the bankruptcy debtor] property rights in any of the funds of the debtor [meaning the account debtor or payor of the funds]. Consequently, the debtor did not have a property interest in the money which was transferred to PTC." *Id.,* 41 B.R. at 578.

The instant case is distinguishable from the *Marketing Resources* case. In *Marketing Resources,* IBM's obligation ran directly to PTC in settlement of a lawsuit between IBM and PTC. The payment was in satisfaction of its own obligation, not the debtor's or any antecedent debt owed by the debtor. The debtor merely had a claim against PTC for any funds that PTC got from IBM. In essence, the debtor was trying to use its avoidance power to levy on funds that PTC received from IBM. This is clear from the court's recognition that the avoidance of IBM's transfer would not return money to the bankruptcy estate, but only require PTC to return its money to IBM.

The *Marketing Resources* court correctly noted that just because an entity may owe money to someone who in turn owes money to the debtor, the debtor doesn't have a property interest in the funds transferred between the non-debtors. *Id.* at 578.

In the case before this court, the Settlement Agreement and the HHV Acknowledgement indicate that payments from HHV to the Participants discharge obligations of the Debtor to the Participants. The transfer sought to be avoided by the Debtor is not the actual payment of funds from HHV to the Participants, but the avoidance of the right of HHV to pay the Participants directly in satisfaction of the Debtor's obligations to the Participants. In other words, NSB seeks to avoid the right, given by NSB to the Participants, to receive payments due to the Debtor.

As the *Marketing Resources* court noted in its second opinion on a motion to amend its initial judgment, "if an insolvent debtor arranges to pay a favored creditor through the disposition of [an account receivable], to the

depletion of his estate, it must be regarded as equally a preference whether he procures the payment to be made on his behalf by the debtor in the account—the same to constitute a payment in whole or part of the latter's debt—or he collects the amount and pays it over to his creditor directly. This implies that, in the former case, the debtor in the account for the purpose of the preferential payment, is acting as the representative of the insolvent and is simply complying with the directions of the latter in paying the money to his creditor." *Id.* at 582 n. 5.

The Settlement Agreement between NSB and the Participants requires NSB to "cause" HHV to pay directly certain participation profits to the Participants and provides that such payments shall be "credited" to sums due from NSB to the Participants. In fact, until payments are made, NSB remains obligated to the Participants and guarantees HHV's performance to the Participants.

The Participant's argument that the Cross–Complaint is insufficient because it establishes that the NSB relinquished control over future payments from HHV to the Participants begs the question. The transfer of this control is the transfer in issue.

Therefore, the *Marketing Resources* case does not deal with the particular fact pattern presented in the case before this court and does not demonstrate, as a matter of law, that NSB has *no property interest* in the Profit Participation Funds that are the subject of the agreements in question.

■ When considering a motion to dismiss, the Court must accept as true all factual allegations in the light most favorable to the plaintiff and to deny the request to dismiss unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. Fed.R.Bank.P. 7012(b); Fed.R.Civ.P. 12(b)(6). Viewed according to this standard, the *Marketing Resources* case does not dispose of this Debtor's case.

The Participants' reliance on the *Matter of Van Huffel Tube Corporation,* 74 B.R. 579, 585 (Bankr.N.D.Ohio 1987) is also not dispositive of this case. The *Van Huffel* case recognizes that in order to escape avoidance the non-debtor transferor, rather than the debtor, has to control or direct the payments sought to be avoided. *Id.,* 74 B.R. at 586 (stating "The crucial question is whether [the non-debtor transferor], in fact, exercised control over the funds and directed to whom the funds should be paid"). In the NSB case, the evidence presently before the court does not indicate that HHV was in this position. In fact, the agreements tend to show the opposite: that NSB directed HHV to make the payments to the Participants. Subsequent evidence may cast these agreements in a different light, but on the record before this court, language from the *Van Huffel* case cited by the Participants does not decide the issue before this court.

■ 2. The Participants second argument for dismissal, that the payments by HHV are not avoidable because HHV had an independent obligation to pay the Participants, relies heavily on the Ninth Circuit Bankruptcy Appellate Panel case of *In re Flooring Concepts, Inc.,* 37 B.R. 957 (Bankr. 9th Cir.1984).

In the *Flooring Concepts* case, there was an agreement among the contractor (Konwiser), the sub-contractor debtor, and Shaw (the material supplier) that Konwiser would pay Shaw directly for materials ordered by the debtor. The Bankruptcy Appellate Panel found that the agreement between Konwiser and Shaw was supported by independent consideration that created an independent obligation between Konwiser and Shaw and that transfers pursuant to this independent obligation could not be avoided because they never became part of the bankruptcy estate. *Id.,* 37 B.R. at 961. The consideration consisted of Konwiser's direct payment to Shaw in exchange for Shaw forbearing on his independent statutory right to place a lien on Konwiser's property.

The Participants argue that their case is like the *Flooring Concepts* case because the Participants got direct payments in exchange for "valuable consideration and as a material inducement to [the Participants] entering into the Settlement." The Participants note in their Reply to the Debtor's Opposition that the Participants got direct payments of 64.8% of net profits according to the defini-

tion of "net profits" that is set forth in the HHV Acknowledgement and the Participants got the right to accountings from HHV.

Based solely on the agreements and pleadings before the court, it appears that the NSB and the Participants may have received a benefit from the Settlement Agreement between the Participants and NSB in that the lawsuit was settled. The Participants also got assurances from NSB that they would receive direct payments from HHV and a change in the definition of "net profits" that would be applied to determine the sums due. Under the HHV Acknowledgement which was signed by all three parties, it would appear that HHV gave consideration by agreeing to the change in their fee but it is not clear that HHV got in return as "valuable consideration."

The Participants argue, in their Reply, that the independent "valuable consideration" received by HHV included the right to exploit the Terminator. But the records does not reflect that HHV was a party to the lawsuit being settled or that the lawsuit would have resulted in HHV losing the right to exploit the Terminator if the Participants had prevailed. According to the Settlement Agreement, the lawsuit sought damages, accountings and equitable relief. Did the Participants seek to rescind the contract or to enforce it? If the contract between the Participants and NSB had been rescinded, would HHV automatically have lost the right to exploit the Terminator? HHV was not a party to the Settlement Agreement and the Debtor argues that HHV received no consideration for the assignment of NSB's right to payments from HHV to the Participants.

In the motion before the court, the question of whether the transfer of NSB's rights to payment by HHV to the Participants is avoidable does not turn on whether the contract between the Participants and NSB was supported by valuable consideration. This is not the question briefed by the parties. Indeed, the contract may have been valid when made and still be avoidable as a preferential transfer.

The question of whether HHV and the Participants made a new contract with an independent obligation running from HHV to the Participants which was supported by valuable consideration on each side is the issue that requires examination in this motion. What was HHV's independent interest in paying the Participants instead of the Debtor? The Complaint in Interpleader filed by HHV indicates that HHV does not care who it pays so long as it only has to pay once. The evidence on this issue is not sufficient to find, on a motion to dismiss, that an independent obligation arose within the reasoning set forth in the *Flooring Concepts* case.

The issue of whether the agreement between the Participants and NSB can be avoided under 11 U.S.C. § 547 is not the subject of this motion. Instead, this motion raises the issue of whether there is sufficient evidence to determine that the agreement *cannot* be avoided for the reasons argued. The Participants have not met the requisite burden of showing that the payments directed from NSB to the Participants are not property of the Debtor under the *Marketing Resources* rationale or that a direct obligation from HHV to the Participants was supported by independent consideration as was the case in the *Flooring Concepts* case.

Based on the foregoing analysis, the motion to dismiss is DENIED.

IT IS SO ORDERED.