In re Joseph Aubrey
BOURGEOIS, Debtor.

H. Kent AGUILLARD,
Trustee, Plaintiff,

v.

BANK OF LAFAYETTE, Guaranty
Bank and Trust, and First
National Bank, Defendants.

Bankruptcy No. 485–00270–LO–7.
Adv. No. 485–0060.

United States Bankruptcy Court,
W.D. Louisiana.

Jan. 13, 1986.

H. Kent Aguillard, Eunice, La., trustee.

M. Terrance Hoychick, Eunice, La., for trustee.

Steven J. Dupuis, Lafayette, La., for Bank of Lafayette.

Calvin T. Guidry, Lafayette, La., for Guaranty Bank.

## MEMORANDUM OPINION AND ORDER

RODNEY BERNARD, Jr., Bankruptcy Judge.

This is an action brought by the trustee herein to avoid certain transactions between the debtor and the defendants, Bank of Lafayette and Guaranty Bank & Trust [referred to collectively herein as Banks.] The Trustee also seeks to avoid an assignment of accounts receivable pledged to Bank of Lafayette. Having considered the evidence and arguments presented, the following shall constitute the findings and conclusions of the court.

### Preference Action

The transactions which are alleged to be preferential under 11 U.S.C. § 547 all took place within ninety (90) days prior to the filing of the debtor's petition, and all were payments on long-term loans. The defend-ants do not dispute that all of the elements of preferential transfers were present. Instead, they defend this action as the basis of 11 U.S.C. § 547(c)(2). That subsection states that a trustee may not avoid a transfer which was in payment of a debt incurred in the ordinary course of business of the debtor and the transferee, was paid in the ordinary course of business of the debtor and the transferee, and was made according to ordinary business terms. The issue is thus whether these payments meet the "ordinary course of business" exception to the trustee's avoiding powers under section 547.

In order to fall within the exception set out in section 547(c)(2), the defending creditor must prove several distinct elements. First, the debt on which the alleged preferential payment was made must have been incurred in the ordinary course of business of the debtor *and* the transferee. Second, the payment must have been made in the ordinary course of business of the transferee *and* again, in the ordinary course of business of the *debtor*. Finally, the transfer must have been made according to ordinary business terms.

In order to determine whether the Banks have met this burden, the meaning of "ordinary course of business" must be considered. Analysis of that question is complicated by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (P.L. 98–353), which amended section 547(c)(2), eliminating the requirement under prior law that the debt on which the alleged preferential payment was made must have been incurred within forty-five (45) days of the bankruptcy filing. Not only did that amendment seemingly broaden the scope of the ordinary course exception, but because of the 45 day requirement under prior law, most litigation focused on when a debt was "incurred" and thus gives little guidance in this inquiry. *See, e.g. Sandoz v. Fred Wilson Drilling Company. (In re Emerald Oil)* 695 F.2d 833 (5th Cir.1983); *Barash v. Public Finance Corp.,* 658 F.2d 504 (7th Cir.1981); *Wickham v. United American Bank (In re Property Leasing and*

*Management, Inc.)* 46 B.R. 903 (Bankr.M. D.Tenn.1985). In addition, the 45 day requirement limited both the number and kind of ligigants raising the exception. Finally, there is regrettably no legislative history accompanying the 1984 amendment. Therefore, this court is left to define the meaning and scope of the "ordinary course of business" exception in light of that amendment.

In attempting to discern Congressional intent in enacting the 1984 amendment, it is first useful to consider the purpose of section 547, which allows the trustee to avoid "preferential" payments. The nomenclature is itself a statement of purpose. One of the primary goals of the Bankruptcy Code is to insure equal distribution to all creditors. Therefore, where a debtor "prefers" one or more creditors, when bankruptcy is looming, the trustee can avoid, or "undo" that preference. 4 Collier on Bankruptcy ¶ 547.03[1], [2]. (15th ed. 1985); *Barash, supra.* In addition, section 547 was intended to discourage "a rac[e] to the courthouse to dismember the debtor during his slide into bankruptcy", House Report 595, 95th Cong., 1st Session 177–178 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6137–6139, thus facilitating reorganization as well as furthering the goal of equal distribution. *Collier, supra.*

It is also necessary to consider the purpose and intent of section 547(c)(2). As originally enacted, that section was intended to compliment section 547(c)(1) which provided that payments which constituted a "contemporaneous exchange" for goods or services were not preferential. Payments which were made within 45 days were considered to be substantially contemporaneous, and thus unlike antecedent debt. In other words, payment for goods and services where delivered or rendered, or paying for them within 45 days thereafter, did not contravene the policies of section 547. The legislative history of section 547(c)(2) states that "[t]he purpose of this exception is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the

debtor or his creditors during the debtor's slide into bankruptcy." House Report 95–595, 95th Congress, 1st Session (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6329. Thus, payments made by a debtor to employees, suppliers, for utilities and rent, and other similar operating expenses or trade credit transactions, were intended by Congress to be exempt from recovery as preferences. *See Freehling v. Carson (In re Top Sport Distributors, Inc.)* 41 B.R. 235 (Bankr.S.D.Fla.1984); *Armstrong v. General Growth Development Corp. (In re Clothes Inc.)* 45 B.R. 419 (Bankr.D.N.D. 1984); *See also Lingley v. E.B. Kitfield and Co. (In re Nepsco, Inc.)* 49 B.R. 152 (Bankr.D.Me.1985).

The question thus becomes whether, in amending section 547(c)(2) to eliminate the 45 day limit, Congress intended to fundamentally change the scope of the ordinary course exception. This court is convinced that the better view is that the amendment was intended only to eliminate an artificial time limit, and no more. The 45 day limit was eliminated so that the provisions of the Code would comport with normal business policies. From its inception, section 547(c)(2) was intended to exempt normal trade credit transactions. Levin, "An Introduction to the Trustee's Avoiding Powers", 53 Am.Bankr.L.J. 173 (1979). The 45 day provision was intended to reflect a normal trade credit cycle. *Id.* However, after the enactment of the 1978 Code it became clear that trade credit cycles differ from industry to industry, and that the 45 day limit was arbitrary and overly restrictive. The number of cases in which the question of the 45 day provision has been litigated in one way or another, only a few of which are cited herein, attests to that fact. *Nepsco, supra; Ewald Brothers, Inc. v. Kraft, Inc. (In re Ewald Brothers, Inc.)* 45 B.R. 52 (Bankr.D.Minn.1984): *John v. Reading Body Works (In re A. Fassnaeht & Sons, Inc.)* 45 B.R. 209 (Bankr.E. D.Tenn.1984). It also seems unlikely that Congress intended to make a sweeping change in the ordinary course exception, because of the lack of debate and legisla-

tive history accompanying the amendment. This court is of the opinion that the 1984 amendment removed only an arbitrary time limit, and that the spirit and intent of section 547(c)(2), *i.e.* the exemption from avoidance of trade credit transactions which are substantially contemporaneous exchanges, remains the same. Thus, in determining what constitutes the ordinary course of business of the debtor and the creditor, the policies behind section 547, and 547(c)(2) in particular, must be borne in mind.

■■■ The first question under section 547(c)(2) is whether the debt was incurred in the ordinary course of business of the debtor and the creditor. As discussed above, section 547(c)(2) was intended to apply to trade credit transactions, which are similar to contemporaneous exchanges. Long-term loans, on the other hand, are not contemporaneous exchanges, but a form of capitalization which is not generally part of the debtor's day to day business activities. Thus, although long-term loans may be ordinary to the banks, they are not the ordinary course of business of the debtor within the meaning of the section 547(c)(2). "Ordinary course" refers to the debtor's normal business operations of selling goods or providing services, not borrowing money. Further, because of the preference provisions of the Code, this court agrees with the court in *Lingley v. Stuart Shaines, Inc. (In re Acme-Dunham, Inc.)* 50 B.R. 734 (D.Me.1985), which determined that section 547(c)(5) was not intended to apply to long-term installment loans. As stated in *Acme-Dunham,*

> "[t]rade credit transactions are ... a two-way exchange. They further the policies of the Code because they allow the debtor to continue on in business and in the narrow context of ongoing trade exchange, they do not diminish the estate for it is replenished by the goods or services paid for. A long-term loan is an antecedent debt in the traditional sense.... [N]othing is exchanged at the time of the payments ... which helps [the debtor] to continue in business." *Id.* at 741–42.

■■ See also *Barash, supra* (in which a similar conclusion was reached with regard to payments on consumer credit transactions.) In light of that fundamental difference between trade credit and long-term credit, this court finds that the debts in question here were not incurred in the ordinary course of business of the debtor, as that term is used in section 547(c)(2).

■■ Much the same reasoning leads the court to conclude that the payments in question were not made in the ordinary course of business of the debtor within the meaning of that exception to the preference section. Again, the purpose of allowing the trustee to avoid preferential payments is to ensure equal distribution, and to discourage a race to dismantle the debtor. The ordinary course exception is intended to leave normal trade credit and similar transactions undisturbed, because those transactions do not interfere with the policy of discouraging abnormal activity by either the debtor or his creditors prior to bankruptcy. Unusual actions by parties to collect or pay existing debts are proscribed. Unusual actions by *either* the creditor or the debtor which allow the creditor to gain an unfair advantage over other creditors are therefore *not* in the ordinary course of business of the debtor and the creditor. *Campbell v. Cannington* (In re Economy Milling Company) 37 B.R. 914 (D.S.C.1983). *See also Flatau v. Marathon Oil Company (In re Craig Oil Company)* 31 B.R. 402 (Bankr.M.D.Ca.1983). To hold such payments on long term loans to be in the ordinary course of business within the meaning of section 547(c)(2) would be to flout the clear intent of that subsection, and the entire policy of the preference section as a whole. Such a holding would virtually denude the preference provisions of the Code of any meaning at all. Therefore the court finds that the payments in question do not meet the requirements of section 547(c)(2) and thus may be avoided by the trustee.

### Assignment of Accounts Receivable

■■ The trustee also seeks a declaration that an assignment of the debtor's ac-

counts receivable to defendant Bank of Lafayette is not effective as to the trustee. The pledge in question was signed on December 28, 1983, but was not recorded until March 11, 1985, four days *after* the filing of the petition herein.

Section 544 of the Bankruptcy Code confers on the trustee the status of a perfect lien creditor as of the time of filing. While the assignment may be valid as between the creditor and debtor, as long as it remains unrecorded, it has no effect against third parties, including the trustee. 11 U.S.C. § 544; La.Civ.Code Art. 3342; La. R.S. 9:3102(B). Therefore, the trustee's rights under section 544 are superior to the bank's rights in those accounts receivable.

### Conclusion

For the reasons stated above, judgment shall be rendered in favor of the trustee and against the defendants. A written judgment consistent with this opinion shall be signed upon submission.