**In re Rob Lance ROGERS, Debtor.**

**Charles E. COVEY, Trustee, Plaintiff–Appellee,**

v.

**POTTERY WORKERS CREDIT UNION, Defendant–Appellant.**

No. 88–1171.

United States District Court, C.D. Illinois.

Feb. 17, 1989.

Charles E. Covey, Peoria, Ill., for plaintiff-appellee.

Richard E. Barber, Galesburg, Ill., for defendant-appellant.

### ORDER

MIHM, District Judge.

Rob Lance Rogers had borrowed money from his Credit Union to pay family bills since 1984. He made payments on his loan by automatic payroll deduction at the rate of $66.25 each week. Rogers filed a Chapter 7 bankruptcy petition in 1987. During the 90 days prior to the filing of his bankruptcy, Rogers paid to the Credit Union a total amount of $925.50, of which $368.61 was interest.

The Trustee sought to recover the amount paid to the Credit Union within the 90 day period before the filing of the bankruptcy petition. The bankruptcy court allowed the recovery. The Credit Union appeals that decision and presents three arguments.

1. Under § 547 of the Bankruptcy Code, the Debtor's transfer of money to the Credit Union in the form of installment payments on long term debt was made in the ordinary course of business and therefore is not an avoidable preference under § 547(c)(2).

2. The portion of the transfer made to the Credit Union which consists of interest is not an avoidable transfer; when the interest is deducted from the amount paid to the Credit Union the balance paid to the principal is less than $600 and is thus exempt under § 547(c)(7).

3. The Trustee could not prove that claims were filed against the estate merely by introducing into evidence copies of the Debtor's schedule (rather than copies of the proofs of claim on file); because there were no claims proven, the Trustee had no authority to avoid any transactions.

11 U.S.C. § 547(b) provides that a trustee may avoid any interest of the debtor in property transferred on or within 90 days before the date of the filing of the petition. However, under § 547(c) the trustee is not allowed to avoid a transfer to the extent that the transfer was

> in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; made in the ordinary course of financial or financial affairs of the debtor and the transferee; and made according to ordinary business terms.

The bankruptcy court ruled that installment payments on long term debt are not payments incurred in the ordinary course of the business of the Debtor.

Several courts have discussed the meaning of the "ordinary course of business" defense in a preference case brought by a trustee, holding that this defense is direct-

ed primarily to ordinary trade credit transactions which involve some extension of credit that is meant to be paid in full within a single billing cycle. In *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1981) the court stated that:

> Section 547(c)(2) ... is aimed at transactions which, although they are technically credit transactions, are not intended to remain unpaid for a long time. In this sense, the "normal payments" exemption is a variant of the "contemporaneous exchange" exception of § 547(c)(1).

*Id.* at 511. The final holding in *Barash* was "[R]egular installment payments on consumer debts made within 90 days preceding the filing of a bankruptcy petition may be avoided as preferential transfer to the extent the payments are credited to unsecured claims." *Id.* at 512.

The Credit Union argues that 1984 amendments to the Bankruptcy Code which changed § 547(c)(2) brought installment payments within the scope of the exception. Prior to 1984, § 547(c)(2) required that a transfer be made not later than 45 days after the debt was incurred in order to fall under the ordinary course of business exception. That 45 day requirement was eliminated in the 1984 amendment. The change has generated a great deal of comment by scholars, but only two cases, *In re Bourgeois*, 58 B.R. 657 (Bkrtcy.W.D.La. 1986) and *In re Butler*, 85 B.R. 34 (Bkrtcy. D.Md.1988). In *Butler*, the court held that automatic payroll deduction payments made on long term debts to a credit union involved no unusual actions by either the creditor or the debtor which allowed the creditor to gain an unfair advantage over other creditors. The elimination of the 45 day requirement was intended to expand the scope of the exception, protecting preferential transfers in payment of long term debt. Accordingly, the *Butler* court held that the trustee was unable to recover such payments.

The court in *Bourgeois* reached the opposite conclusion. First the court undertook an extensive analysis of the history of § 547(c)(2) and the congressional intent in amending it in 1984. The court looked at the original purpose and intent of § 547(c)(2), finding that it was intended as a supplement to 547(c)(1) which exempted contemporaneous exchange for goods or services. Section 547(c)(2) expanded the idea of contemporaneous exchange to exchanges in which payment was anticipated within 45 days. The 45 day limit was originally intended to reflect a normal trade credit cycle. However, in the late 1970's it became clear to Congress that trade credit cycles differ from industry to industry and that the 45 day limit was arbitrary and overly restrictive. Accordingly, the *Bourgeois* court was convinced that the 1984 amendment was intended only to eliminate the artificial time limit. It was not intended to exempt payments on long term loans.

The *Bourgeois* court then looked at the purpose of § 547 in general within the context of the Bankruptcy Code as a whole. One of the primary goals of the Bankruptcy Code is to insure equal distribution to all creditors. Section 547 was intended to discourage "a race to the courthouse to dismember the debtor during his slide into bankruptcy." House Rep. 595, 95th Cong., 1st Sess. 177–178 (1977), U.S.Code & Admin.News (1978) pp. 5787, 6137–6139, cited in *Bourgeois* at 659.

To hold that payments on long term loans are within the ordinary course of business within the meaning of § 547(c)(2) would flout the entire policy of the preference section as a whole, according to the *Bourgeois* court. Normal trade credit and similar transactions do not interfere with the policy of discouraging abnormal activity by either the debtor or his creditors prior to bankruptcy. However, by exempting payments on long term unsecured loans (or under-secured loans), one particular creditor would gain an advantage over other unsecured creditors. Such payments, according to the *Bourgeois* court, were therefore not in the ordinary course of business of the debtor and creditor.

This Court finds the reasoning of the *Bourgeois* court to be persuasive. It is completely consistent with the reasoning used by the Seventh Circuit in *Barash*. In that case, the Seventh Circuit focused upon whether the transfer enabled a creditor to receive more than he would have received

if the estate had been liquidated under Chapter 7. The principal goal of the preference provision, according to the Seventh Circuit, was assurance of equal distribution among unsecured or under secured creditors. If a transfer diminished the estate, then that policy would be defeated. It does not appear to this Court that the mere elimination of the 45 day limit should be found to have so radically adjusted the meaning of the ordinary course of business defense.

Accordingly, this Court AFFIRMS the bankruptcy court's decision that regular installment payments on long term consumer debts made within 90 days preceding the filing of a bankruptcy petition may be avoided by the Trustee as preferential transfers to the extent that those payments are credited to an unsecured claim.

■ Section 547(c)(7) precludes the trustee from avoiding a transfer "if, in a case filed by an individual debtor whose debts are primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $600." The Credit Union argues that the portion of the installment payments made up of interest is not considered a preference under § 547(b) and thus cannot be avoided under § 547(c). In this particular case, if the interest amount is deducted from the total paid to the Credit Union, the amount paid on principal is under $600 and thus exempt under § 547(c)(7). The bankruptcy court ruled otherwise.

The Credit Union argues that the concept of excluding the amount paid to interest is merely a refinement on *Barash*. One of the issues in *Barash* was the precise point in time that a debt is incurred, a necessary determination under the old § 547 language with the 45 day limit. The court in *Barash* stated that a debt was incurred at the time when the debtor obtained a property interest in the consideration exchanged giving rise to the debt. *Barash*, 658 F.2d at 509.

In *In re Iowa Premium Service Co., Inc.*, 695 F.2d 1109 (8th Cir.1982), the court treated interest obligations just like all other debts and found that a debt for interest payments is incurred on the date upon which the obligor first becomes legally bound to pay the interest. In other words, a debtor agrees to pay interest for the use of money but does not incur a debt for the interest until he actually uses the money. Thus, an interest debt is not incurred until the interest accrues.

However, there are important factual distinctions between the *Iowa* case and the case at bar. Foremost is the fact that in *Iowa* the installment payments at issue consisted entirely of interest. A finding that the debtor did not incur any legal obligation to pay the interest until the interest actually accrued is entirely different than a situation in which a debtor becomes obligated to make payments of principal and interest together on a regular basis for a specified period of time.

In addition, the transaction in *Iowa* was between a bank and a finance company. It was not a consumer debt. Thus, at least to a certain extent, the policy considerations are very different.

Furthermore, in *Barash* the issue was precisely one of consumer installment payments on long term debt. The Seventh Circuit made no distinction between the portion of the payment applied to the principal and that applied to interest. Despite the fact that *Iowa* has been accepted by the Fourth Circuit (*In re Smith–Douglass, Inc.*, 842 F.2d 729 (4th Cir.1988)), a number of bankruptcy courts in other circuits have refused to follow these two circuits. In *In re Acme–Dunham, Inc.*, 50 B.R. 734 (D.Me.1985), the court held that:

A loan is not really an ongoing series of transactions between the parties but a single transaction in which the debtor receives the principal and in consideration agrees to repay it along with whatever interest accrues. While the payment of interest may be contingent, the obligation to pay it, if necessary, arises when the debtor gets a property interest in the consideration exchanged ... It seems clear to this court, ... that that occurs when the debtor accepts the money from the lender.

*Id.* at 741.

Furthermore, it is evident that payments of interest as well as payments of principal

diminish the bankruptcy estate. There is no contemporaneous exchange of goods at the time the payments are made.

Accordingly, this Court AFFIRMS the bankruptcy court's holding that the interest portion of an installment payment is also a preferential transfer and can be avoided. Because of that holding, the § 547(c)(7) exception is not applicable.

■ The Credit Union's argument that the Trustee failed to show a preferential effect because submission of the schedule of debts did not constitute a proof of claims is rejected. In a preference recovery action, part of the Trustee's obligation is to show a preferential effect. If no such effect is shown, then the preference recovery action will fail. For example, if the trustee fails to show that there are any claims, or if the evidence presented shows that there are sufficient assets to pay any existing claims in full, then the trustee has failed to meet his burden of proof.

■ In the case at bar, claims against the estate were proved by admission into evidence of the Debtor's schedules, setting forth all of the Debtor's liabilities, instead of proving each allowable claim on the estate. These schedules show that the Debtor, as of the date of bankruptcy, had unsecured claims of $11,520.20, of which $7,785 is attributable to the Credit Union's claim. Only the Credit Union received more than $600 from the Debtor during the 90 days prior to bankruptcy. His other creditors received little or nothing. Furthermore, the Trustee's report of assets (Exhibit No. 1) consists only of this preference case worth $927.50. Clearly, there are insufficient assets in the estate to pay all claims.

The Credit Union has provided this Court with no legal or logical reason which persuades this Court that the bankruptcy court's decision was in error. There are no claims of error in the schedules nor is there any evidence of questionable motive behind the trustee's choice of how to prove the claims on the estate. Accordingly, this Court AFFIRMS the bankruptcy court on this issue.

In sum, this Court finds no error in any of the three rulings made by the bankruptcy court. The holding is therefore AFFIRMED in all parts.