**In re Kenneth R. SPRAGUE, Sr., Debtor.**

**Donna P. WOOLLEY; Associated Technologies, Inc. and Thomas A. Huntsberger, Trustee, Plaintiffs,**

v.

**Kenneth R. SPRAGUE, Sr. and Donna Wong Sprague, Defendants.**

**Bankruptcy No. 687–07121–R7. Adv. No. 687–5233–R.**

United States Bankruptcy Court, D. Oregon.

Aug. 21, 1989.

Paul R. Meyer, Portland, Or., for plaintiff, Donna Woolley.

George A. Morris, Morris & O'Keif, Springfield, Or., for plaintiff, Assoc. Technologies, Inc.

Thomas A. Huntsberger, Ackerman, DeWenter & Huntsberger, P.C., Springfield, Or., plaintiff/trustee.

Michael W. Doyle, Perrin, Gartland, Doyle & Nelson, P.C., Eugene, Or., for defendants.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE,
Bankruptcy Judge.

This matter comes before the court upon the motion for summary judgment filed on behalf of the defendants.

### FACTS

The pleadings, memoranda and affidavits submitted by the parties establish the following undisputed facts.

This dispute arises from a joint venture agreement formed in 1983 and known as "Queststar". Both defendant, Kenneth R. Sprague, Sr. (Sprague), and plaintiff, Donna P. Woolley (Woolley), became interested in developing health facilities and exercise machines in 1983. They entered into a letter of intent to enter into a joint venture. The letter of intent, dated April 29, 1983, provided that Woolley would form an Oregon corporation to be operated as a subsidiary of Eagle's View Management, Inc. (eventually Eagle's Quest, Inc.) and that Sprague would form a California corporation (eventually Eaglet corporation.) These two corporations would then enter into a joint venture to develop a series of sports entertainment complexes in California.

The letter of intent also expressed the parties' intentions as to the contents of the future joint venture agreement. In particular, the letter of intent indicates that the parties anticipated that the individual principals of the two corporate joint venturers might be required to execute personal guarantees on behalf of the joint venture. The letter of intent states "... each such guarantor will agree to indemnify and hold the others harmless for pro-rata shares of Jt. venture debt." (Letter of Intent p. 3) Both Woolley and her agent, James G. White, signed the letter of intent along with Sprague.

On June 30, 1983, Eagle's Quest, Inc. and Eaglet Corporation entered into a formal joint venture agreement. The joint venture agreement contains an expanded version of the indemnity clause contained in the letter of intent as follows:

It is contemplated that the joint venture will be financed through a loan or series of loan transactions. Both parties shall guarantee all such loans and agree each to indemnify the other against any losses incurred in accord with the respective pro-rata shares of ownership by the parties. The parties recognize that personal guarantees may be required by prospective lenders to the joint venture. In such event, the principal shareholders of each party and their spouses, if any, shall execute the personal guarantees. In the event of any claim against the individual principals based upon their written personal guarantees, the individual principals signatory hereto covenant between and among themselves that each principal shall be jointly and severally liable to the extent of fifty percent (50%) of any such claim. The individual principals further agree in consideration of their

mutual promises that they shall indemnify, defend and hold each other harmless from the proportionate shares of liability exceeding those set forth in this paragraph. (Joint Venture Agreement, ¶ 4, p. 2.)

At the time the joint venture was formed, the parties were aware that substantial sums would be necessary to finance their proposed projects. The parties expected that the capital would be obtained from First Interstate Bank of Oregon, N.A. (First Interstate), since Woolley had an ongoing business relationship with First Interstate.

As part of the loan application process, Sprague completed a financial statement on a form provided by First Interstate. Further, both Woolley and Sprague executed personal guarantees in favor of First Interstate.

First Interstate approved a loan for approximately $625,000. Soon, thereafter, Queststar began operations. In late 1983, Queststar began renovation of a building located in Hollywood, California. The renovation was completed in March, 1984 at which time the health club opened for operation. Queststar defaulted on its building lease in June, 1984. In July, 1984, Queststar ceased all operating functions. Queststar failed to make payments due to First Interstate.

Following this default, First Interstate obtained a state court judgment against Sprague and Woolley as guarantors of the joint venture debt. Woolley paid First Interstate's judgment in the sum of $769,-395.60. Subsequently, Woolley was awarded a state court judgment on an indemnity claim against Sprague in the amount of $384,697.80, plus interest thereon at a rate of 9.5% per annum from December 4, 1986 until paid.

Sprague filed his petition for relief under Chapter 7 herein on May 29, 1987.

## PROCEDURAL STATUS AND ISSUE

Plaintiffs commenced this adversary proceeding under both 11 U.S.C. § 523 and 11 U.S.C. § 727. Plaintiffs' second amended complaint filed April 1, 1988 contains four claims for relief. The plaintiff, Associated Technologies, Inc. claims, as an assignee of First Interstate, that a judgment obtained by the bank against Sprague in the sum of $22,730.05 plus interest thereon for costs, disbursements and attorneys' fees incurred by First Interstate in recovering sums loaned to Queststar is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). Both plaintiffs allege that Sprague should be denied a discharge herein pursuant to 11 U.S.C. § 727 since he transferred assets to defendant, Donna Sprague, for little or no consideration in fraud of Sprague's creditors, and that Sprague concealed such transfers and/or his interest in property so transferred to within one year prior to the filing of the bankruptcy petition herein. Both plaintiffs assert that a constructive trust should be imposed upon defendant, Donna Sprague, as a result of the alleged fraudulent transfers. In her first claim for relief, Woolley seeks a declaration that her judgment against Sprague referred to above in the amount of $384,697.80 plus interest is non-dischargeable under 11 U.S.C. § 523(a)(2)(B) since the financial statement prepared by Sprague was materially false and that she relied upon such financial statement in her decision to enter into the joint venture agreement and to extend her personal guarantee to the loan approved by First Interstate.

The defendants filed their answer to the second amended complaint on April 7, 1988.

The defendants filed their motion for summary judgment herein on March 15, 1989, contending that: Plaintiffs, Woolley and Associated Technologies, Inc., did not rely upon the financial statement furnished by Sprague to First Interstate, or that, if they did so rely, their reliance was not reasonable as required by 11 U.S.C. § 523(a)(2)(B); Sprague did not transfer property to defendant, Donna Sprague, in fraud of creditors and he is not guilty of any concealment; and that defendant, Donna Sprague, does not hold any property of Sprague which would be subject to the imposition of a constructive trust. Defendants contend that Woolley's alleged reliance upon Sprague's financial statement

is not included within the scope of 11 U.S.C. § 523(a)(2)(B) and that Woolley is not protected thereby.

Plaintiffs responded to defendants' motion for summary judgment and a hearing was held thereon on June 6, 1989. This court, having considered the argument of counsel, the memoranda and other documents submitted in support of and in opposition to the motion for summary judgment concluded that the defendants' motions should be denied as there are material issues of fact that must be resolved at trial. An appropriate order was entered herein on June 9, 1989.

This court took under advisement, however, the question as to whether or not Woolley's alleged reliance upon Sprague's allegedly false financial statement falls within the scope of 11 U.S.C. § 523(a)(2)(B).

## DISCUSSION

All statutory references are to the Bankruptcy Code, Title 11 U.S.C.

Defendants argue that § 523(a)(2)(B) does not apply here as its scope does not extend to the circumstances surrounding this debt. Defendants maintain that even if Sprague's financial statement was materially false and even if Woolley relied thereon, Sprague did not obtain money, property or an extension, renewal or refinancing of credit from Woolley as a result of the financial statement since First Interstate loaned the money, not Woolley. Further, at the time the joint venture agreement was executed and when the personal guarantees of Sprague and Woolley were given to First Interstate, Woolley was not a creditor of Sprague.

Section 523(a)(2)(B) provides as follows:
Section 523

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2)) for money, *property*, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement of writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) *on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied;* and

(iv) that the debtor caused to be made or published with intent to deceive;

(emphasis added)

Defendants have cited no authority to support their proposition that Sprague did not obtain property from Woolley by his alleged use of a materially false financial statement. In *In re McShirley*, 79 B.R. 71 (Bankr.M.D.Fla.1987), the court reviewed cases expanding the definition of "property" under § 17(a)(2) of the Bankruptcy Act to include "obligations, rights and other intangibles as well as physical things" and concluded that:

... this court is satisfied that when a debtor induces another to sign as a guarantor on an obligation, and the guarantor is ultimately held liable on the obligation and makes payment thereon, the debtor has obtained 'property' within the meaning of the § 523(a)(2)(A) exception to discharge. 79 B.R. at 73.

This court concurs with the reasoning of the *McShirley* court and concludes that Sprague obtained property from Woolley at the time she extended her personal guarantee to First Interstate Bank to guarantee the loan made by First Interstate Bank to the joint venture.

It follows that when the personal guarantee of Woolley was given to First Interstate, she became a creditor of Sprague holding a contingent claim against him.

Finally, defendants argue that Woolley's first claim for relief must fail since it was not Woolley and Sprague as individuals, but rather their respective corporations that entered into the joint venture agreement.

It is plain from the joint venture agreement and the parties' course of dealings that Sprague and Woolley, in their individual capacities, agreed to execute personal guarantees to First Interstate and to indemnify one another for any future liability on the bank loan. The guarantees were indeed executed. After default, First Interstate sued and obtained judgment

against the individual guarantors. Woolley has since obtained a judgment against Sprague *individually* based on the indemnification agreement contained in the joint venture agreement. At most, the defendants' contentions create an issue of fact to be resolved at trial.

Accordingly, defendants' motion for summary judgment concerning all issues should be denied. An order consistent herewith shall be entered.

This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052; they shall not be separately stated.

### SUPPLEMENTAL ORDER DENYING SUMMARY JUDGMENT

Based upon this court's prior order denying defendants' motion for summary judgment, in part, the court having entered its opinion concerning the remaining issues and being fully advised in the premises;

Now, therefore, IT IS HEREBY ORDERED that the defendants' motion for summary judgment be and it hereby is denied in its entirety.