**In re HELEN GALLAGHER ENTERPRISES, INC., aka/dba Helen Gallagher's Kaleidoscope, Debtor.**

**Charles E. COVEY, Trustee, Plaintiff,**

**v.**

**NORTHWEST COMMUNITY BANK, Defendant.**

**Bankruptcy No. 88–81590.**
**Adv. No. 89–8079.**

United States Bankruptcy Court, C.D. Illinois.

May 7, 1991.

Charles E. Covey, Covey & Litterst, Ltd., Peoria, Ill., Trustee.

Kevin D. Schneider, Thomas W. O'Neal, Westervelt, Johnson, Nicoll & Keller, Peoria, Ill., for defendant.

### OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

This is an adversary proceeding seeking recovery of alleged preferential transfers and the matters under consideration are joint motions for summary judgment.

The relevant facts, as stipulated are as follows. The Debtor, Helen Gallagher Enterprises, Inc., sold gift items at retail and maintained retail outlets nationwide. Francis E. Giamette and Dolores A. Giamette were the President and the Secretary of the Debtor. From time to time, the Debtor borrowed money on both a short-term and long-term basis to finance its operating cash requirements. On October 10, 1985, the Debtor borrowed $550,000.00 from the Defendant, Northwest Community Bank. Under the terms of the Small Business Administration note, installment payments were payable in the amount of $9,563.00 each, payable monthly, commencing one month from the date of the note. The Giamettes personally guaranteed the note. The Debtor made regular payments on the note through August, 1987. In the year preceding the bankruptcy, the Debtor made the following payments:

| DATE | AMOUNT |
| --- | --- |
| September 3, 1987 | $ 9,563.00 |
| October 9, 1987 | 9,563.00 |
| November 13, 1987 | 9,563.00 |
| December 14, 1987 | 9,563.00 |
| January 21, 1988 | 9,563.00 |
| February 16, 1988 | 9,563.00 |
| March 10, 1988 | 2,766.68 |
| April 10, 1988 | 3,729.01 |
| April 29, 1988 | 1,504.31 |
| Total | $65,378.00[1] |

On June 15, 1987, the Debtor borrowed $300,000.00 from the Defendant. The Giamettes also personally guaranteed this note. Under the terms of the Small Business Administration note, the principal and accrued interest were to be paid in full on or before December 30, 1987. On December 24, 1987, the Debtor paid the Defendant $317,900.00 in full payment of the note.

On or about February 16, 1988, the Defendant loaned the Debtor and Francis E. Giamette the sum of $250,000.00, as evidenced by a promissory note. This note was not repaid.

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on August 12, 1988. The Trustee brought this adversary proceeding, seeking to recover the payments made less than one year and more than ninety days before the bankruptcy on the October 10, 1985, and the June 15, 1987, notes in the amount of $383,278.00. Cross motions for summary judgment were filed. A hearing was held on December 18, 1990. At the hearing, the Trustee agreed that the Defendant's loan to the Debtor and Francis E. Giamette on February 16, 1988, was a contemporaneous exchange for new value within the meaning of Section 547(c)(1) and that the Defendant was entitled to a set-off of $250,000.00.[2] The matter was taken under advisement.

There are two issues before the Court. The first is whether the Seventh Circuit Court of Appeals' decision in *Levit v. Ingersoll*, 874 F.2d 1186 (7th Cir.1989), often referred to as *Deprizio*, is controlling. The Defendant contends that it is factually distinguishable from the present case. Alternatively, the Defendant argues that *Deprizio* was wrongly decided and that this Court should not follow it. The second issue is whether the ordinary course of business defense of Section 547(c)(2) applies.

Under the general rule, a trustee may recover a payment to a creditor made within ninety days of the filing of the bankruptcy, if that payment enabled the creditor to receive more than it would have received in a Chapter 7 liquidation distribution, subject to certain statutory defenses available to the creditor such as the ordinary course of business exception and the "new value" exception. Payments made to insiders, however, are subject to a broader, one-year recovery period. In *Deprizio*, the court held that the trustee could recover from an outside creditor a transfer made more than 90 days before the filing that is avoided as a preferential transfer because

---

1. If the Debtor made any payments within the ninety-day period immediately preceding the filing of the bankruptcy, those payments are not at issue in this proceeding.

2. The parties were not in agreement as to how this set-off would be applied should the Trustee prevail only in part. However, because of the result this Court reaches the Trustee totally prevails and this issue is now moot.

it benefitted an inside creditor who had guaranteed the debt. Finding that result mandated by the language of the Code itself, the court noted that the legislative history was unavailing. The court stated:

The creditors say that we must infer that Congress meant to preserve the practice, under the Bankruptcy Act of 1898, of recovering payments only from those to whom the transfer represented a preference, see Dean v. Davis, 242 U.S. 438, 443, 37 S.Ct. 130, 131, 61 L.Ed. 419 (1917) (dictum), on the theory that if Congress made a change as momentous as this, surely someone would have said so. Frequently the pre–1978 practice will be informative. Yet "[i]t is not the law that a statute can have no effects which are not explicitly mentioned in its legislative history." When Congress makes wholesale change in the text and structure of the law, it is fatuous to pretend that a silent legislative history means that existing practices should continue unchanged. The 1978 Code separates the identification of avoidable transfers (section 547) from the identification of those who must pay (section 550), a structural change with no antecedents in the 1898 Act. It also creates for the first time the principle that transfers may be recoverable from either transferee or beneficiary—something introduced to section 550(a)(1) in the Conference Committee, too late for comment in the usual committee reports. Changes of this character show that the pre–1978 practice is not a useful guide to interpreting the relation between sections 547 and 550.

Applying the longer preference-recovery period to outside creditors would not put the Code in conflict with fundamental policies reflected in both state and federal law—in Kelly [v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)] the policy denying discharge to criminals seeking to avoid penalties for their crimes, in Midlantic [Nat. Bank v. New Jersey Dept. of Environmental Protection, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986)] the policy of requiring those who discharge hazardous wastes to clean them up. The Court thought it fantastic to suppose that Congress would provide for the discharge of criminal restitution orders when it expressly forbade discharge of penal sanctions, or that Congress would allow polluters to leave the mess to someone else (technically, allow unsecured creditors to obtain larger shares of the debtor's assets even though the clean-up obligation passed through bankruptcy as a charge against the firm's assets). It therefore resolved ambiguities in the Code in a way harmonious with the structure of the rest of bankruptcy law and non-bankruptcy entitlements. There is no similarly enduring policy concerning the length of the preference-recovery period for outside creditors or the relation between insiders' guarantees and the preference-recovery period. An extended recovery period is consistent with the structure of the Code and does not subvert any of its functions. A longer period when insiders reap benefits by preferring one outside creditor over another facilitates the operation of bankruptcy as a collective process and ensures that each creditor will receive payments according to the Code's priorities and non-bankruptcy entitlements. Silence in the legislative history therefore does not require or authorize a court to depart from the text and structure of the Code. (Citations omitted.)

Deprizio was recently followed by the Tenth Circuit in In re Robinson Bros. Drilling, 892 F.2d 850 (10th Cir.1989) and the Sixth Circuit in In re C–L Cartage Co., 899 F.2d 1490 (6th Cir.1990). However, the decision is not without criticism. See Toth, The Impossible State of Preference Law Under the Bankruptcy Code: Levit v. Ingersoll Rand Financial Corp. and the Problem of Insider–Guaranteed Debt, Wisc.L.Rev. (Summer, 1990); Matter of Midwestern Companies, Inc., 102 B.R. 169 (W.D.Mo.1989).

The Defendant, relying on the terms of the Giamettes' guaranty, contends that as to the October 10, 1985 note for $550,-000.00 which was not paid in full, they are not "creditors" within the ambit of the

*Deprizio* ruling. This contention is based upon the following provision, which is contained in both guaranties executed by the Giamettes:

> The undersigned shall have no right of subrogation whatsoever with respect to the liabilities or the collateral unless or until the lender shall have received full payment of all liabilities.

The Defendant likens the Giamettes to a "responsible person" under the Internal Revenue Code who is individually liable for a corporation's income taxes. In *Deprizio,* the court held that although payments by a corporation on taxes which reduce an insider's exposure benefit the insider, the insider, unlike a guarantor, is not a "creditor" as defined within the meaning of the Bankruptcy Code:

> A person is a "creditor" only to the extent he holds a "claim" against the debtor. So all turns on whether a "person required to collect, truthfully account for, and pay over any tax"—in the shorthand of tax law, a "responsible person" —has a contingent right to recover from the debtor in bankruptcy, the only basis for calling him a "creditor."
>
> Section 6672(a) does not authorize a responsible person to recover from the firm. Nothing in the text or structure of the statute suggests that the responsible person can seek compensation from anyone else. The law imposes a "penalty" on the defaulting responsible person. This is personal liability, standing apart from the firm's tax debt: The government customarily collects the full tax only once, from the employer or the responsible person, but nothing in the text of 6672(a) prevents the Commissioner of Internal Revenue from collecting both the taxes withheld by the employer and the penalty from the responsible person. Because the responsible person owes his own debt to the government, he does not

hold a "claim" against the debtor and so is not a creditor. (Citations omitted.)

The Defendant interprets *Deprizio* to require that the insider must have an immediate right of subrogation or recoupment against the debtor as to the debt paid. The Defendant argues that because the Giamettes waived all right to subrogation until the debt had been paid in full, that as of the date of the bankruptcy, the Giamettes did not "benefit as a creditor" by the payments made to the Defendant.

This Court rejects the Defendant's argument. First and foremost, the Giamettes obviously benefited as creditors by the Debtor's payments on the notes. Had the payments not been made, the Defendant would have turned to the Giamettes for the full balance due on the notes. Secondly, the subrogation provision was included in the guaranties for the Defendant's protection. The Debtor was required to pay the lender—the Defendant—prior to paying the guarantors. The Defendant cannot now point to the provision to shield itself from liability.

██ Lastly, many cases have held that guarantors are classic examples of creditors holding "contingent" claims. *See,* e.g. *In re Blehm,* 33 B.R. 678 (Bkrtcy.D.Colo. 1983).[3] Merely because the Giamettes' right of subrogation was "postponed" does not deprive them of their status as creditors. A guarantor holds a contingent claim from the moment of the execution of the guaranty. *Kapela v. Newman,* 649 F.2d 887 (1st Cir.1981); *In re Sprague,* 104 B.R. 352 (Bkrtcy.D.Or.1989). With respect to the typical guaranty, the contingency is the default of the primary obligor. *See Blehm, supra.* In the present case there is simply a further contingency—that being payment of the debt in full. Whether that right has ripened into a right of reimbursement as of the bankruptcy filing is not

---

**3.** The legislative history to Section 101(9)(A) provides that:

> A guarantor of or surety for a claim against the debtor will also be a creditor, because he will hold a contingent claim against the debtor that will become fixed when he pays the

creditor whose claim he has guaranteed or insured. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 309–10 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 22 (1978), U.S.Code Cong. & Admin.News 1978 pgs. 5787, 5808, 6266–6267.

determinative. It is simply a question of timing.[4]

Alternatively, the Defendant suggests that *Deprizio* was wrongly decided and that this Court should reject it. But this Court is bound by *Deprizio* and it is controlling in this case. Additionally, this Court believes that *Deprizio* is correctly decided. However, the Court will address the Defendant's arguments for the record. The Defendant contends that the "two transfer theory" which the *Deprizio* court rejected is correct, that the court failed to give due regard to equitable considerations and that the court's interpretation of the statute is not wholly consistent. The Defendant first contends that the court in *Deprizio* overlooked Section 547(b)(5). That section provides that the trustee may avoid any transfer:

> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. Section 547(b)(5).

The Defendant argues that the reference to "creditor" throughout this section must be to the guarantor, and not to the non-insider lender and that as the payments to the Defendant did not enable the Giamettes to "receive more" than if the payments had not been made, the requirement of Section 547(b)(5) has not been met. The Defendant urges that the more the Debtor paid the Defendant the less the amount of the Giamettes' claims, hence the less they could "receive" from the bankruptcy estate.

While the Defendant's premise that the reference to creditor throughout refers to the same entity is correct, the remainder of the Defendant's reasoning is flawed. The comparison called for by the statute is the benefit received by the creditor as a result of the preferential payment—here a dollar for dollar reduction in the Giamettes' exposure on the guaranty—to the benefit they would have received had the payment not been made. In a case where there is less than a 100% distribution, unsecured creditors receiving a preferential payment receive more than they would in a Chapter 7 liquidation. *In re C–L Cartage Co., Inc.,* 899 F.2d 1490 (6th Cir.1990); *In re Lewis W. Shurtleff, Inc.,* 778 F.2d 1416 (9th Cir. 1985); *In re Continental Country Club, Inc.,* 108 B.R. 327 (Bkrtcy.M.D.Fla.1989); *Matter of Lawrence,* 82 B.R. 157 (Bkrtcy. M.D.Ga.1988). That is also true of an unsecured guarantor. The amount the guarantor owes after the preferential payment by the debtor will always be less than the amount calculated to be owed by the guarantor on the note after the lender's receipt of the prorated Chapter 7 distribution.

In addition, it must also be noted that a guarantor who fails to pay the debt will not itself receive any distribution under the Chapter 7 case. Section 502(e)(1) provides:

> [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—
>
> (A) such creditor's claim against the estate is disallowed;
>
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or
>
> (C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.[5]

---

**4.** As later discussed, the Bankruptcy Code provides that a claim of a guarantor shall be disallowed by the court unless the guarantor has paid the obligation. *See Greatamerican Federal Savings & Loan Assn. v. Adcock Excavating, Inc.,* 1990 WL 51219, 1990 U.S.Dist. LEXIS 4348 (slip op. April 16, 1990 N.D.Ill.). While not

determinative of the issue here, this provision goes against the Defendant's position.

**5.** As the court noted in *Greatamerican Federal Savings & Loan, supra,* this provision reflects two Congressional policies:
> First, this provision reflects a congressional belief that the bankruptcy scheme will most

To interpret the statute as proposed by the Defendant would be absurd. The guarantor must be "benefitted" by the transfer to the lender, for if it was not, the threshold requirement for a preferential transfer would not be met, and it is this benefit which must be compared in making the Chapter 7 liquidation analysis.

The Defendant also argues that a lender in the *Deprizio* situation should not be treated as the initial transferee under Section 550(a) of the Bankruptcy Code, but rather as an immediate transferee. Immediate or mediate transferees have the benefit of a good faith defense under Section 550(b). Factually, the Defendant was the initial transferee and this Court will not indulge in any fiction that it was a subsequent transferee.

. Finally, the Defendant contends that the *Deprizio* court failed to consider the inequities resulting from a literal application of Section 550. Even though the creditors did not make that argument in *Deprizio*, the *Deprizio* court addressed the issue because it had been the focus of attention of other courts in similar cases. The court's response was both pragmatic and persuasive:

> Rules of law affecting parties to voluntary arrangements do not operate "inequitably" in the business world—at least not once the rule is understood. Prices adjust. If the extended preference period facilitates the operation of bankruptcy as a collective debt-adjustment process, then credit will become available on slightly better terms. If a longer period has the opposite effect, creditors will charge slightly higher rates of interest and monitor debtors more closely. In either case creditors will receive the competitive rate of return in financial markets—the same risk-adjusted rate they would have received with a 90–day preference-recovery period. A rule may injure debtors and creditors by foreclosing efficient business arrangements and in-
> > effectively meet its objectives if the bankrupt estate is not burdened by claims which have not come to fruition. Instead, the bankrupt's circumstances should be put into order as expeditiously as possible, allowing the bankrupt to quickly get back on certainty and

creasing the rate of interest low-risk borrowers must pay, but inefficiency is not inequity. At all events, in what sense is it "inequitable" to recapture payments to creditors that may have been favored only because payment reduced insiders' exposure (recall that the insiders select which debts to pay first), then distribute these monies according to statutory priorities and contractual entitlements? In what sense is it "inequitable" to require the outside lenders to pursue the inside guarantors for any shortfall, when they bargained for exactly that recourse? (Citations omitted.)

In conclusion, *Deprizio* is binding on this Court and controls this case.

■ The second issue is whether the ordinary course of business exception applies. The Defendant contends that the debts underlying both notes and the payments thereon occurred in the ordinary course of the Debtor's business. Section 547(c)(2) of the Bankruptcy Code provides that the trustee may not avoid a preferential transfer to the extent that the transfer was:

> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (C) made according to ordinary business terms.

11 U.S.C. Section 547(c)(2).

This provision had been amended in 1984, to eliminate a requirement that the payment come within 45 days of the debt to be considered as one in due course. The effect of that amendment had been debated, as some courts and commentators believed that installment payments on long-term debt would now escape recovery as preferential transfers. *In re Butler*, 85 B.R. 34 (Bkrtcy.D.Md.1988), *rev'd. In re Finn*, 909 F.2d 903 (6th Cir.1990) (long term consum-

> finality in the satisfaction of ascertainable claims. Second, the provision evidences an intent by Congress to "prevent competition between a creditor and his guarantor for the limited proceeds in the estate." (Citations omitted.)

er debt that is not "unusual action" is within the "ordinary course" exception).

In *In re Rogers*, 127 B.R. 844 (C.D.Ill. 1989, Mihm, J.), Judge Mihm affirmed a decision of this Court, holding that regular installment payments on long-term consumer debts are not within the ordinary course of business exception of Section 547(c)(2). The court stated:

To hold that payments on long term loans are within the ordinary course of business within the meaning of Section 547(c)(2) would flout the entire policy of the preference section as a whole, according to the *Bourgeois* court. Normal trade credit and similar transactions do not interfere with the policy of discouraging abnormal activity by either the debtor or his creditors prior to bankruptcy. However, by exempting payments on long term unsecured loans (or undersecured loans), one particular creditor would gain an advantage over other unsecured creditors. Such payments, according to the *Bourgeois* court, were therefore not in the ordinary course of business of the debtor and creditor.

This Court finds the reasoning of the *Bourgeois* court to be persuasive. It is completely consistent with the reasoning used by the Seventh Circuit in *Barash*. In that case, the Seventh Circuit focused upon whether the transfer enabled a creditor to receive more than he would have received if the estate had been liquidated under Chapter 7. The principal goal of the preference provision, according to the Seventh Circuit, was assurance of equal distribution among unsecured or undersecured creditors. If a transfer diminished the estate, then that policy would be defeated. It does not appear to this Court that the mere elimination of the 45 day limit should be found to have so radically adjusted the meaning of the ordinary course of business defense.

In *In re Bourgeois*, the court held that " 'ordinary course' refers to the debtor's normal business operations of selling goods or providing services, not borrowing money." 58 B.R. 657, 660. (Bkrtcy.W.D.La. 1986).

The Defendant relies on the court's comments in *Deprizio* in discussing the scope of Section 547(c)(2): There, in dictum, the court stated:

This is the current version of Section 547(c), as amended in 1984 to eliminate the former requirement in Section 547(c)(2) that the payment come within 45 days of the debt to count as one in due course, a qualifier that at least potentially allowed the trustee to recover all installment payments, because the contract had been signed and credit extended more than 45 days before a given payment. Cf. *In re Xonics Imaging Inc.*, 837 F.2d 763 (7th Cir.1988). We need not decide whether installment payments before 1984 may be recovered even though made within 45 days of their due date, because this appeal does not present for decision the Trustee's effort to recoup any particular transfer. It is enough to observe that Section 547(b)(5) and (c), both before and after amendment, exclude from recovery the bulk of ordinary commercial payments.

The *Deprizio* court then listed several situations put forth by the creditors in arguing for the rejection of the extended recovery period. The following scenario was included:

A creditor makes an unsecured loan guaranteed by an insider and requires monthly payments over a number of years. The trustee seeks to recover all of the payments during the year before the filing. To the extent the debtor paid on time, the creditor is protected by the current version of Section 547(c)(2), the "ordinary course" rule. (The state of things for payments before the amendment is less clear, as we have mentioned.)

The court concluded that in light of the many exceptions to the preference provisions, that "equity" or "policy" reasons are unnecessary and unavailing.

The Defendant argues that the Seventh Circuit is sending a message on how it will rule when faced with the issue of installment payments on long-term debt as pay-

ments in the ordinary course of business. But that signal is not crystal clear. In *Matter of Xonics Imaging Inc.*, 837 F.2d 763 (7th Cir.1988), the court refers to the *Bourgeois* case, relied on by Judge Mihm in *Rogers*, as telling the story of the elimination of the 45–day requirement. In any event, this Court need not interpret that signal for it is bound by Judge Mihm's decision in *Rogers*, which this Court perceives is correct. Recently, the court in *Matter of CHG Intern., Inc.*, 897 F.2d 1479 (9th Cir.1990), reached the same result, deciding that the 1984 amendment eliminated the artificial 45–day limitation and nothing more.

■ Alternatively, the Defendant argues that the note dated June 15, 1987, maturing on December 30, 1987, was a "short-term" debt which is unquestionably within the confines of Section 547(c)(2), citing *In re Colonial Discount Corp.*, 807 F.2d 594 (7th Cir.1986). In that case, the debtor was in the business of buying and selling real estate. At the time the debtor filed bankruptcy, it held hundreds of separate parcels of real estate. One hundred four days prior to the filing, the debtor borrowed $150,000.00 from a lender, giving the lender a security interest on a tract of real estate. The note and mortgage were later assigned to a surety on the loan. Twenty-one days later, and two days before the note matured, the debtor paid the surety $50,000.00 on the loans, which was transmitted to the lender. The maturity date of the note was extended for 21 days. Because the debtor failed to pay the note, the surety paid the lender the amount due.

Holding that the loan and the $50,000.00 payment were made in the ordinary course of business, the court stated:

> The purpose of the ordinary course of business exception is to ensure that normal commercial transactions are not caught in the net of the trustee's avoidance powers. The obvious extra-"ordinary" transaction is one designed to give the transferee an advantage over other creditors in bankruptcy. Nothing in the record suggests that the ... loan transaction was related in any way to pre-

bankruptcy planning. The loan was originally made some 104 days prior to the bankruptcy filing date and the payment in question some 79 days prior thereto. Nor does it indicate any "unusual action by either the debtor or creditor" to collect or pay on the deal.

> On the contrary, the record shows that for twenty years [the debtor] was in the business of buying and selling real estate, and that its business regularly involved borrowing large sums of money. [The surety] had previously done business with several people at [the debtor, including its sole shareholder.] The note was initially assigned a short due date and the partial repayment on the note was made shortly before it became due and in consideration of an extension of the due date, all normal business arrangements. In sum, the record supports the conclusion of the courts below that the October 23, 1981 note, as well as the due date extension to December 7, 1981 and the $50,000 payment on November 13, 1981, two days prior to the note's original November 16, 1981 maturity, in consideration of that extension, were all in the ordinary course of business of both the debtor and the transferee and were in ordinary business terms. (Citations omitted.)

The present case is readily distinguishable on its facts. There is no evidence in the record that the Debtor borrowed moneys from the Defendant on a regular basis. To the contrary, the parties stipulated that the Debtor borrowed sums of money "from time to time." In *Hickey v. Nightingale Roofing, Inc.*, 83 B.R. 180 (D.Mass.1988), the court stated the purpose of the "ordinary course of business" exception:

> In short, this exception was apparently designed to provide an exemption from preferential treatments for those short term obligations to cash creditors whose debts generally come due on something like a monthly basis. It was "payments made by a debtor to employees, suppliers, for utilities and rent, and other similar operating expenses or trade credit transactions [which] were intended by

Congress to be exempt from recovery as preferences." (Citation omitted).

This exception was designed to protect creditors such as employees or trade creditors, who, continuing to do business with a debtor on a regular basis do not thereby contribute to a debtor's slide into bankruptcy. In this Court's view, if the exception were to be enlarged to include loans, only those borrowings which were repaid and relent on a short-term established cycle, such as before the court in *Colonial Discount*, could be encompassed.

In the present case, the term of the note exceeds six months. In *In re ZZZZ Best Co., Inc.*, 921 F.2d 968 (9th Cir.1990), the court rejected the creditor's position that payments made on an eight-month revolving credit agreement were made in the ordinary course of business because the debt was "short-term" as it was less than one year, relying on its decision in *CHG Intern.*, *supra*, and noting that one of the notes in that case was for seven months yet was considered to be "long-term." This Court need not decide whether Section 547(c)(2) is limited to short-term ordinary trade credit transactions or should more broadly include all short-term credit transactions, for the term of the note in this case exceeded six months, and under *CHG Intern.*, *supra*, and *ZZZZ Best*, *supra*, is "long-term" debt.[6]

■ The Trustee has requested prejudgment interest. Under this Court's decision in *In re Industrial & Municipal Engineering, Inc.*, 127 B.R. 848 (1990), the Trustee is entitled to interest from April 20, 1989, the date the adversary proceeding was filed, at the rate of 9.51%, which was the coupon issue yield equivalent for the April 6, 1989, auction of 54-week United States Treasury bills.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

**6.** This Court does not mean to imply that it would consider a note for a term of six months to be a "short-term" note, but only determines that a note for a term in excess of six months is a "long-term" debt.

**ORDER**

For the reasons set forth in the Opinion entered this day;

IT IS, THEREFORE, ORDERED:

1. That the Plaintiff's motion for summary judgment is GRANTED;

2. That the Defendant's motion for summary judgment is DENIED; and

3. That judgment is entered in favor of the Plaintiff and against the Defendant in the amount of $133,278.00, plus interest at the rate of 9.51% from April 20, 1989, through May 7, 1991, plus costs.